**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KENT CORPORATION, Respondent.**

**No. 75–1392.**

United States Court of Appeals, Fifth Circuit.

April 8, 1976.

---

4. Va.Code Ann. § 6.1–327 (1973), *recodified* § 6.1–330.43 (Supp.1975).

5. *See* note 3 *supra.*

Elliott Moore, Deputy Assoc. Gen. Counsel, Elinor Hudley Stillman, N.L. R.B., Washington, D. C., Walter C. Phillips, Director, Region 10, N.L.R.B., Atlanta, Ga., for petitioner.

C. V. Stelzenmuller, Birmingham, Ala., for respondent.

Application for Enforcement of an Order of the National Labor Relations Board (Alabama Case).

Before TUTTLE, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

The Board found that the employer Kent: interfered with, restrained and coerced its employees in violation of § 8(a)(1); violated §§ 8(a)(2) and (1) by interfering with the internal affairs and administration of the unaffiliated local union and by assisting it in opposing an organizational campaign conducted by the Boilermakers' Union; violated §§ 8(a)(3) and (1), by discriminatorily discharging nine employees; violated §§ 8(a)(4), (3) and (1) by discharging six employees who signed unfair labor practice charges filed against Kent by the Boilermakers and refused to withdraw their names from those charges.

 Kent has not established that it was the victim of an unfair hearing rising to the level of violation of due process or of prejudicial error requiring that we deny enforcement.[1]

 Except for the claim that it did not get a fair hearing, Kent does not contest the findings of restraint, coercion and interference, so we need not discuss them beyond observing that the record fully supports the Board's finding that Kent "engaged in a massive assault on the rights of employees under the Act for the purpose of keeping the Association [the unaffiliated local union] in and the Boilermakers out."

 Of 15 discharges Kent questions seven. The only one meriting discussion is that of Calvin Wright. He had been elected president of the unaffiliated local union on March 2. Shortly thereafter Kent officials characterized that election as illegal and called for a new election, which was held. Supervisory employees opposed Wright but he was elected again. Soon thereafter, on March 23, Wright was laid off on the asserted ground that his job as day shift janitor was abolished because of a materials shortage. A third election was held a few days later and another person chosen as president. On April 3 or 4, Wright was recalled for a job as night shift janitor. That job also had been "abolished" on March 23 but had been "reinstated." There was credited testimony that Wright was told the night job required him to drive a "highster" [Hyster], or forklift, to pick up trash and

1. Counsel for the General Counsel, did, however, make inappropriate remarks concerning the Turkish origin of Kent's night-shift superintendent (the president of Kent also is of Turkish origin).

scrap metal. He responded that he had never been on such a machine in his life, could not drive it, and would not want to take a chance on tearing up something. Kent treated this as a quit. The Board finding that this sequence of events was part of a plan to rid the company permanently of Wright was supported by substantial evidence.

[4] The Board ordered back pay for Roy Glass. There was testimony by former employee Ralph Wilson that Glass had suggested to him that he make bomb threat calls to the plant. Wilson acknowledged having made such a call, and it is stated that he pleaded guilty to a felony for having done so. The ALJ did not make a credibility determination rejecting Wilson's testimony but rather stated his understanding that Wilson's testimony had been offered for a different issue than Glass' eligibility for back pay, that Glass' eligibility for back pay had not been made an issue by Kent, and that the Board had not recalled Glass as a witness to respond to Wilson's testimony. We agree with Kent that the evidence concerning the bomb threat is relevant to Glass' right to back pay. However, the precise positions of the parties are hazy. We are unsure whether the Board claims that Glass' entitlement to back pay has been adjudicated adversely to Kent or that it has not been adjudicated and remains to be determined in a compliance proceeding. We are also unsure whether Kent claims that we are required to decide on this record that Glass is not entitled to back pay and that the back pay issue is then foreclosed, or only that the issue remains open, to be later determined with consideration given to the Wilson testimony. We,, therefore, hold that the issue of back pay for Glass remains open to be determined in such procedural context as is appropriate, upon consideration of the Wilson testimony and such other evidence as the company and the Board wish to adduce.

ENFORCED in part. REMANDED on the issue of entitlement of Roy Glass to back pay.