### BRISTOL–MEYERS COMPANY, Appellant,

v.

### FEDERAL TRADE COMMISSION et al.

### No. 77–1275.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 4, 1978.

Decided Aug. 22, 1978.

As Amended on Denial of Rehearing Oct. 19, 1978.

Gilbert H. Weil, New York City, with whom Bruce R. Hafner, New York City, was on brief, for appellant.

Paul Blankenstein, Atty., Dept. of Justice, Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Barbara Allen Babcock, Asst. Atty. Gen., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Also Jeffrey Axelrad, Lynne K. Zusman, Atty., Dept. of Justice and Jerald D. Cummins, Atty., F. T. C., Washington, D. C., entered appearances for appellee.

Before BAZELON, McGOWAN and MacKINNON, Circuit Judges.

Opinion for the Court filed by BAZELON, Circuit Judge.

Dissenting opinion filed by MacKINNON, Circuit Judge.

BAZELON, Circuit Judge.

Bristol-Myers Company seeks disclosure of certain documents prepared by the Federal Trade Commission (FTC or Commission) in the course of an investigation and administrative enforcement proceeding concerning advertising claims made by manufacturers of nonprescription, internal analgesic drugs. The district court found that the information contained in these documents is protected by exemptions 5 and 7(A) of the Freedom of Information Act, 5

U.S.C. §§ 552(b)(5) and (7)(A) (1976), and granted summary judgment for the FTC. We remand to the district court for further proceedings.

## I. BACKGROUND

Bristol-Myers is presently contesting a complaint issued by the FTC in February, 1973, charging that the company has falsely advertised Bufferin, Excedrin, and Excedrin P.M. in violation of sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 52.[1] Pursuant to the Commission's regulations pertaining to discovery,[2] Bristol-Myers has been able to gain access to various studies prepared by or for the FTC concerning consumer awareness and perceptions of analgesics products, and to scientific studies possessed by the FTC concerning the efficacy, speed of action, safety, and side effects of these products. Joint Appendix (J.A.) 121a–125a. Additionally, through resort to FOIA,[3] the company has obtained from the Commission 3,160 documents, comprising 31,742 pages, relevant to the charges contained in the complaint. J.A. 114a.

In July, 1976, Bristol-Myers brought suit in the United States District Court for the District of Columbia for disclosure of 1300 documents withheld by the Commission. J.A. 10a–12a. During the course of the district court proceeding, however, the company withdrew its request for a substantial portion of these materials. J.A. 3a–4a, 267a, 283a. Still in dispute are 327 documents, comprising 765 pages. J.A. 4a.

In support of its motion for summary judgment, the Commission filed an indexed description of the information appearing in these 327 documents. J.A. 208a–223a. The index divides the documents into nine cate-

---

1. F.T.C. Docket No. 8917. The Commission has also instituted similar proceedings against other producers of analgesics, American Home Products, Inc., F.T.C. Docket No. 8918, and Sterling Drugs, Inc., F.T.C. Docket No. 8919.

2. 16 C.F.R. § 3.31 et seq. Under these regulations, Bristol-Myers applied to the presiding administrative law judge (ALJ) for a subpoena directing the Commission to produce docu-

ments relating to the charges. The ALJ's opinion granting the subpoena in part and denying it in part appears in the Joint Appendix (J.A.) at 121a–125a. The Commission denied a motion by Bristol-Myers for an interlocutory appeal from the ALJ's order. J.A. 206a–207a.

3. *See generally* 16 C.F.R. § 4.11, the Commission's regulation pertaining to FOIA requests.

gories,[4] summarized by the Commission as follows:

CATEGORY A.

Inter-agency memoranda.

CATEGORY B.

100 "Blue Minutes," i. e., reflections of the Commission's deliberations.

CATEGORY C.

Documents from Commissioners.

CATEGORY D.

Interview reports (of expert witnesses).

CATEGORY E.

Correspondence between staff and consultants.

CATEGORY F.

One letter discussing a witness' dissatisfaction with his compensation.

CATEGORY G.

Drafts and comments (of proposed rules, notice orders, and complaints).

CATEGORY H.

Staff written reports of interviews by counsel.

CATEGORY I.

Memoranda from files of U.S. Pharmocopeial Convention.

The Commission also filed the affidavit of James H. Skiles, an attorney in the FTC's Bureau of Consumer Protection who has been assigned to the adjudicative proceeding against Bristol-Myers. J.A. 112a–120a. The affidavit explains the Commission's justifications for invoking exemptions 5 and 7(A) of FOIA.

It was on the basis of the index and accompanying affidavit that the district court granted summary judgment for the Commission.

## II. ANALYSIS

The record establishes that the Commission voluntarily disclosed the overwhelming majority of the documents requested. Its index and affidavit, on the whole, describe with particularity the nature and contents of the documents withheld, as required by our decision in *Vaughn v. Rosen,* 157 U.S. App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

The withheld materials can be divided into two broad classes for purposes of analysis. The documents indexed in four Categories, A, B, C, and G, are all said to have been prepared by staff, individual Commissioners, or the Commission itself during the Commission's process of deciding whether and how to proceed against analgesics manufacturers. Brief for the Commission at 32. The documents indexed in three Categories, D, E, and H, are all said to have been prepared by staff counsel and to contain communications, including interviews, with expert consultants contacted by the Commission during the analgesics investigation. *Id.*

### A. "Predecisional" Memoranda

The district court found that the documents indexed in Categories A, B, C, and G are shielded from disclosure by exemption 5. This exemption permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

The Commission contends that this result was correct insofar as Categories A, C and G are concerned because these memoranda are communications between and among FTC staff and Commissioners containing "advice, recommendations, opinions, analyses of potential trial or rule-making strategy and evaluations of evidence." J.A. 114a.[5] Relying on the Supreme Court's decisions in *Renegotiation Board v. Grumman Aircraft,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1965) and *NLRB v. Sears, Roe-*

---

**4.** Brief for the Commission at 10 n.10. Bristol-Myers has withdrawn its request for disclosure of the documents indexed in Categories F and I. Hence only seven of the categories are in dispute.

**5.** The Commission also contends that a substantial portion of this material is exempt as attorney "work product." In view of our disposition of the case, however, we need not decide this question. *See* notes 11, and 23, *infra* and accompanying text.

*buck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1965), as well as our decision in *Sterling Drug, Inc. v. FTC,* 146 U.S.App. D.C. 237, 450 F.2d 698 (1971), the Commission argues that these documents are thus "predecisional" in character and must be protected in order to "prevent injury to the quality of agency decisions." Brief for the Commission at 19–20 (*quoting Sears, supra,* 421 U.S. at 151, 95 S.Ct. 1516). The Commission contends that the documents listed in Category B—its so-called "Blue Minutes" —are similarly exempt as deliberative material under our decision in *Ash Grove Cement Co. v. FTC,* 167 U.S.App.D.C. 249, 250, 511 F.2d 815, 816, *rehearing denied,* 171 U.S.App.D.C. 285, 519 F.2d 934 (1975).

Bristol-Myers, on the other hand, urges that the documents indexed in these Categories may be subject to the affirmative disclosure and indexing requirements of FOIA contained in 5 U.S.C. § 552(a)(2). These requirements apply to "final opinions . . . made in the adjudication of cases," § 552(a)(2)(A), to "statements of policy and interpretations which have been adopted by the agency," § 552(a)(2)(B), and to "instructions to staff that affect a member of the public," § 552(a)(2)(C).

The interplay of exemption 5 with the affirmative provisions of FOIA on which Bristol-Myers relies presents a comparatively new issue, which the Supreme Court discussed in *NLRB v. Sears, Roebuck & Co., supra.* Before examining that case, however, we discuss briefly the development of principles governing exemption 5.

■ It is well-established that, among other purposes, exemption 5 was intended by Congress to protect "the consultative functions of government . . . ." *Sears, supra,* 421 U.S. at 149, 95 S.Ct. 1491

(*quoting Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939, 946, 141 Ct.Cl. 38, 49 (1958). *See also EPA v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). S.Rep.No.813, 89th Cong., 2d Sess., 9 (1966) (hereinafter S.Rep. No.813); H.R.Rep.No.1497, 89th Cong., 2d Sess. 10 (1966) (hereinafter H.R.Rep.No. 1497), U.S.Code Cong. & Admin.News 1966, p. 2418. Such protection extends generally to documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* 421 U.S. at 150, 95 S.Ct. at 1516 (*quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.D.C.1966), *aff'd per curiam,* 128 U.S.App.D.C. 10, 384 F.2d 979, *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967)). Such protection was deemed necessary by Congress, the Senate Report explains, because "it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny." S.Rep.No.813, *supra,* at 9. *See also United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974) ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process.").

In seeking to implement this congressional mandate, courts have established the general principle that predecisional memoranda are privileged,[6] while postdecisional memoranda—communications designed to explain a decision already made—are not.[7]

The Supreme Court recognized in *Sears,* however, that "the line between predecisional documents and postdecisional docu-

---

6. *See, e. g., Sears, supra,* 421 U.S. at 151, 95 S.Ct. 1504; *Boeing Airplane Co. v. Coggeshall,* 108 U.S.App.D.C. 106, 280 F.2d 654 (1960); *Zacher v. United States,* 227 F.2d 219 (8th Cir. 1955), *cert. denied,* 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858 (1956); *Clark v. Pearson,* 238 F.Supp. 495 (D.D.C.1965); *O'Keefe v. Boeing Co.,* 38 F.R.D. 329 (S.D.N.Y.1965); *Walled Lake Door Co. v. United States,* 31 F.R.D. 258 (E.D.Mich.1962).

7. *See, e. g., Sears, supra,* 421 U.S. at 152, 95 S.Ct. 1504; *Bannercraft Clothing Co. v. Renegotiation Board,* 151 U.S.App.D.C. 174, 466 F.2d 345 (1972), *rev'd on other grounds,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Sterling Drug, Inc. v. FTC,* 146 U.S.App.D.C. 237, 450 F.2d 698 (1971); *GSA v. Benson,* 415 F.2d 878 (9th Cir. 1969).

ments may not always be a bright one. Indeed, even the prototype of the postdecisional document—the 'final opinion'—serves the dual function of explaining the decision just made and providing guides for decisions of similar or analogous cases in the future." 421 U.S. at 152 n. 19, 95 S.Ct. at 1517.

Two aspects of the Court's holding in *Sears* are material to our analysis here. First, the Court ruled that Advice and Appeals Memoranda prepared by the General Counsel for the National Labor Relations Board (NLRB) deciding *not* to issue a complaint must be disclosed under FOIA.[8] Although the NLRB urged that these memoranda were predecisional, the Court held exemption 5 inapplicable. It based this conclusion both on the affirmative disclosure and indexing requirements contained in 5 U.S.C. § 552(a)(2) and on considerations of congressional policy underlying FOIA. In the context of the practical realities of the NLRB's decision-making process, the Court reasoned, Advice and Appeals Memoranda directing that a charge be dismissed constitute "final opinions" made in the "adjudication of cases."[9] Such documents are therefore covered, irrespective of any pre-

decisional character, by 5 U.S.C. § 552(a)(2)(A). 421 U.S. at 157–159, 95 S.Ct. 1504. The court refused to construe exemption 5 to protect documents covered by this provision, since this "affirmative portion of the Act . . . represents a strong congressional aversion to 'secret [agency] law' . . . and represents an affirmative congressional purpose to require disclosure of documents which have 'the force and effect of law.' "[10] 421 U.S. at 153, 95 S.Ct. at 1518 (citations omitted).

Second, the Court held in *Sears* that a memorandum prepared prior to the decision to dismiss a charge will lose its predecisional character if the agency chooses expressly to adopt or incorporate it by reference in a "final opinion."[11] *Id.* at 161, 95 S.Ct. at 1521. The Court explained:

The probability that an agency employee will be inhibited from freely advising a decisionmaker for fear that his advice, if *adopted,* will become public is slight. First, when adopted, the reasoning becomes that of agency and becomes *its* responsibility to defend. Second, agency employees will generally be encouraged rather than discouraged by public knowl-

---

**8.** The Court also, held, however, that the NLRB was *not* required to disclose those Advice and Appeals memoranda deciding affirmatively *to* issue a complaint. 421 U.S. at 160, 95 S.Ct. 1504. The function of these various documents in the context of the NLRB's decision-making process is discussed at *id.,* 138–142, and 155–160, 95 S.Ct. 1504.

**9.** These documents, the Court found, "represent an explanation . . . of a legal or policy decision already adopted by the General Counsel." 421 U.S. at 155, 95 S.Ct. at 1519. As such, they "effect as 'final' a 'disposition' . . . as an administrative decision can . . ." *Id.* Moreover, the Court observed, "the General Counsel's decisions not to file complaints together with the Advice and Appeals Memoranda explaining them, are precisely the kind of agency law in which the public is so vitally interested and which Congress sought to prevent the agency from keeping secret." *Id.* at 155–156, 95 S.Ct. at 1519.

**10.** The Court expressed "reluctance" about its decision not to require disclosure of Advice and Appeals Memoranda deciding affirmatively *to* issue a complaint, *see* note 8, *supra,* because such documents also "have many of the char-

acteristics of the documents described in 5 U.S.C. § 552(a)(2)." 421 U.S. at 160, 95 S.Ct. at 1521. The Court indicated that such documents may thus contain "secret law." *Id.*

This result was necessary, the Court reasoned, "only because the decisionmaker—the General Counsel—must become a litigating party to the case with respect to which he has made his decision." *Id.* The attorney "workproduct" doctrine therefore precluded disclosure. *Id. See generally* Part B *infra.*

Whether the work-product rule would bar disclosure in a case where, as here, the decisionmaker is the agency itself, and is thus not a litigating party upon issuance of a complaint, is an open question. We need not decide it since Bristol-Myers does not seek disclosure of memoranda explaining the Commission's reasons for instituting the adjudication that is presently pending.

**11.** This rule applies even if the memorandum at issue was prepared by an attorney and might otherwise be exempted as work product. *Sears* makes clear that exemption 5 has no application to memoranda expressly adopted or incorporated by reference in a nonexempt "final opinion." 421 U.S. at 161, 95 S.Ct. 1504.

edge that their policy suggestions have been adopted by the agency. Moreover, the public interest in knowing the reasons for a policy actually adopted by an agency supports . . . [disclosure].

*Id.* (emphasis in original).

Bristol-Myers contends that certain decisions reached by the Commission during the course of the analgesics investigation constitute "final action by the agency" under *Sears* and that those memoranda indexed in Categories A, B, C, and G which explain the Commission's reasons for such action cannot now be regarded as predecisional. Brief for Appellant at 5–10, 14–19. Specifically, Bristol-Myers seeks disclosure of any documents containing the Commission's reasons for (a) choosing not to proceed by rulemaking against the over-the-counter analgesics industry as a whole, (b) terminating a prior adjudicatory proceeding against Bristol-Myers, and (c) choosing not to include certain proposed allegations in the complaint presently pending.[12]

■ The district court held, however, that *Sears* has no application in this case because the Supreme Court "carefully confined [its] holding . . . to the unique structure of the [NLRB]." District Court Opinion at 3 n. 6, J.A. 4a. We disagree. It appears to us that the Court meant in *Sears* to establish as a general principle that action taken by the responsible decisionmaker in an agency's decision-making process which has the practical effect of disposing of a matter before the agency is "final" for purposes of FOIA. If such action is accompanied by a written explanation of the decisionmaker's reasoning, that explanation constitutes a "final opinion" and must be disclosed. Thus, the Court explained its analysis in the language of the Administrative Procedure Act generally:

The decision [by General Counsel] to dismiss a charge is a decision in a "case" and constitutes an "adjudication": an "adjudication" is defined under the Administrative Procedure Act . . . as "agency process for the formulation of an order," 5 U.S.C. § 551(7); an "order" is defined as "the whole or a part of a *final disposition,* whether affirmative [or] negative . . . of an agency in a matter . . .," 5 U.S.C. § 551(6) (emphasis added); . . . Since an Advice or Appeals Memorandum explains the reasons for the "final disposition" it plainly qualifies as an "opinion"; and falls within 5 U.S.C. § 552(a)(2)(A).

*Id.* at 158–159, 95 S.Ct. at 1520.

■ In the FTC's administrative process, the Commission itself is responsible for decisions analogous to those made in *Sears* by General Counsel for the NLRB. The Commission's brief, at 30, makes this clear: "The Commission is invested by law with the authority to issue complaints (15 U.S.C. [§] 45), and while the Commission has delegated authority to various subordinate units, like the Bureau of Consumer Protection, the Commission retains final authority as to whether any complaint shall issue and the content of any issued complaint. 16 C.F.R. [§§] 0.16, 3.11. Similarly, the Commission must authorize any rulemaking action." In this case, then, a decision by the Commission itself to terminate an adjudicatory proceeding or not to include a proposed charge in a complaint is a "decision in a 'case' and constitutes an 'adjudication' . . . [of] 'the whole or a part of . . . a matter'" before the agency. If the Commission prepared a memorandum explaining the reasons for the decision, it would qualify as a "final opinion" and be subject to indexing and disclosure under 5 U.S.C. § 552(a)(2)(A). Similarly, a decision not to

---

12. The record is unclear as to when the Commission actually made these decisions and what exactly they involved. It appears that the Commission originally intended in 1967 to proceed against the analgesics industry through rulemaking. J.A. 19a. Also, Bristol-Myers was charged with violations of the Federal Trade Commission Act in a prior adjudicatory proceeding, F.T.C. Docket No. 8319. J.A. 19a.

The record does not reveal whether hearings were ever actually commenced in connection with either of these proceedings. In any event, the Commission appears to concede that it made these decisions and also chose not to include certain proposed charges in the complaint presently pending. Brief for Comm. at 28–30, 34.

proceed by rulemaking would also be a "final" one for purposes of FOIA. If such a decision were accompanied by a statement of reasons, the statement would be covered under 5 U.S.C. § 552(a)(2)(B) ("statements of policy and interpretations which have been adopted by the agency") or § 552(a)(2)(C) ("instructions to staff that affect a member of the public").[13]

It is unclear on this record, however, whether the Commission itself ever prepared any memoranda explaining its basis for these decisions. As noted earlier, the Commission says that the documents written by staff and individual Commissioners (Categories A, C, and G) were prepared for purposes of discussion. And the so-called "Blue Minutes" (Category B) are said to be merely "reflections of the Commission's deliberations." The Commission was not required under FOIA to prepare memoranda explaining its decisions. *Renegotiation Board v. Grumman Aircraft*, 421 U.S. 168, 192, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *Mead Data Central, Inc. v. United States Department of the Air Force (Mead Data II)*, 188 U.S.App.D.C. 51 at 54, 575 F.2d 932 at 935 (1978). And if it chose not to do so, we could not determine whether the reasons underlying its decision were identical to those in the documents prepared by staff and individual Commissioners for its consid-

eration. *Grumman, supra,* 421 U.S. at 192, 95 S.Ct. 1491; *Mead Data II, supra,* 188 U.S.App.D.C. at 55, 575 F.2d at 936; *Kent Corp. v. NLRB,* 530 F.2d 610 at 619–620; *Sterling Drug, Inc. v. FTC, supra,* 146 U.S. App.D.C. at 244–245, 450 F.2d at 705–708. At best, Bristol-Myers could argue that these documents *might* contain the reasons underlying the Commission's actions. In such circumstances the Supreme Court has made it clear that disclosure would violate exemption by impinging on the agency's predecisional processes. *Grumman, supra,* 421 U.S. at 192, 95 S.Ct. 1491.

We are troubled, however, by the ambiguity in the record concerning the nature and contents of the Commission's "Blue Minutes." The index provides only the following description of Category B: "Over 100 so-called 'blue minutes' or reflections of the Commission's deliberations." J.A. 216a. Evidently, the Commission simply assumed that these minutes are per se protected under our decision in *Ash Grove Cement Co. v. FTC,* 167 U.S.App.D.C. 249, 511 F.2d 815, *rehearing denied,* 171 U.S. App.D.C. 285, 519 F.2d 934 (1975), and therefore decided that additional detail was unnecessary. At oral argument, counsel for the Commission indicated that this was the case and acknowledged that the minutes

---

**13.** The Commission contends that these decisions were "merely preliminary determinations which, if the current administrative proceedings run their course, will ripen into final decisions which will then comprise the 'working law' of the agency." Brief for Comm. at 29. Accordingly, it is asserted, any memoranda explaining these decisions cannot be regarded as "final opinions . . . made in the adjudication of cases." *Id.* at 28–29.

We think that *Sears* establishes that "negative" decisions reached by an agency in the course of an adjudication are not preliminary ones for purposes of FOIA. The Court expressly held that the decision to dismiss a charge, if accompanied by a statement of reasons, "represent[s] the 'law' of the agency." 421 U.S. at 158, 95 S.Ct. at 1520. In so doing, as indicated above, it referenced language in the Administrative Procedure Act, 5 U.S.C. §§ 551(6) and (7), providing that an "adjudication" is the "final disposition" of any "part" of a "matter" before the agency. Indeed, the Court appears to have rejected General Counsel's argument

"that the Appeals Memoranda [deciding affirmatively *to* issue a complaint] represent only the first step in litigation and [therefore] are not final; . . ." 421 U.S. at 157, 95 S.Ct. at 1519. As noted earlier, *see* note 10, *supra*, the Court recognized that such memoranda "have many of the characteristics of ['final opinions'] . . . [,]" *id.* at 160, 95 S.Ct. at 1521, and declined to order the NLRB to disclose them "only because" of work-product considerations. *Id.* A question left undecided by *Sears* is whether the work-product doctrine would bar disclosure even of affirmative memoranda in a case where, as here, the decisionmaker is not a litigating party upon issuance of a complaint.

Although *Sears* did not involve a decision not to proceed by rulemaking, we think the Court's reasoning applies by analogy. Such a decision is one of "policy," 5 U.S.C. § 552(a)(2)(B), and one that "affects the public," *id.* § 552(a)(2)(C), and the public would be "vitally interested" in knowing the Commission's reasons. *Cf. Sears, supra,* 421 U.S. at 156, 95 S.Ct. 1504.

could have been described with greater particularity if that were required.

We think that both the Commission and the district court [14] read too much into our decision in *Ash Grove*. In that case, two types of "minutes" were at issue. First, the "Blue Minutes" were described there as "staff directives," 167 U.S.App.D.C. at 250, 511 F.2d at 816, not as "reflections of the Commission's deliberations." [15] These "staff directives" were held to be protected by exemptions 5 and 7. *Id.* Whether such directives may be withheld after *Sears* is a question we need not decide.[16] Second, the Commission had withheld its so-called "chronological minutes," described as

> accounts of the Commissioner's executive meetings and conferences . . . the deliberations of the Commission such as exchange of opinions between individual Commissioners, their recommendations, motions, discussions and statements. They also contain staff recommendations and involve pending cases, internal reorganization procedures, personnel actions, *policy determinations* and generally reflect the Commission's decision-making process.

*Id.* 167 U.S.App.D.C. at 251, 511 F.2d at 817 (emphasis supplied by the court). The court held that the one-paragraph description of the chronological minutes was conclusory under the standards established by our prior decisions [17] and that the portions of these minutes which contain policy determinations were subject to disclosure. It directed the district court on remand to examine at least a representative portion of the minutes *in camera* before determining whether or not exemption 5 applied. *Id.* 167 U.S. App.D.C. at 252, 511 F.2d at 818.

It would appear that the "Blue Minutes" at issue in this case are akin to the "chronological minutes" involved in *Ash Grove*. Thus, before applying exemption 5 to the Blue Minutes, the district court should have ascertained whether they contain "policy determinations" within the meaning of *Ash Grove*.[18] The district court did not address this question, and certainly could not have resolved it on the basis of the description supplied by the Commission.

■ The district court should also have addressed the question whether any information in the "Blue Minutes" qualifies as "final opinions . . . made in the adju-

---

**14.** The district court also appears to have read *Ash Grove* to mean that the Commission's "Blue Minutes" are per se exempted from FOIA's mandatory disclosure provisions. District Court Opinion at 4, J.A. 5a.

**15.** We should note that although the evidence of record in this case establishes only that the "Blue Minutes" are "reflections of the Commission's deliberations," J.A. 216a, the Commission's Brief, at 30, describes them as "staff directives reflecting the Commission's deliberations." Although we base our decision on the record evidence, it bears mention that this inconsistency manifests that not merely the contents but also the purpose of the so-called "Blue Minutes" is in need of considerable clarification. *See also* note 16 *infra* and accompanying text.

**16.** The court in *Ash Grove* did not address the question whether such "directives" might, for example, be subject to disclosure and indexing under 5 U.S.C. § 552(a)(2)(C) as "instructions to staff that affect a member of the public; . . . ."

**17.** *See, e. g., Pacific Architects and Engineers, Inc. v. Renegotiation Board,* 164 U.S.App.D.C. 276, 505 F.2d 383 (1974); *Cuneo v. Schlesinger,*

157 U.S.App.D.C. 368, 484 F.2d 1086 (1973), *cert. denied sub nom. Rosen v. Vaughn,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**18.** Both the index and affidavit are silent with respect to this question. This will not suffice because the government is required under FOIA to prove that it is entitled to the exemption claimed. 5 U.S.C. § 552(a)(4)(B). *Compare Renegotiation Board v. Grumman Aircraft,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1965), the principal case on which the Commission relies, where there was testimony concerning whether particular documents contained the reasons underlying the Board's decisions. *Id.* at 185–186, 189, 95 S.Ct. 1491.

Also, we should note that it may be argued on the basis of *Sears* that the "policy determinations" discussed in *Ash Grove* are subject not merely to disclosure but also to the affirmative indexing requirement contained in 5 U.S.C. § 552(a)(2). *See Ash Grove Cement Co. v. F.T.C.,* 171 U.S.App.D.C. 285, 286, 519 F.2d 934, 935 (1975) (denying petition for rehearing).

dication of cases" within the meaning of *Sears.* If so, such opinions are subject not only to disclosure but also to the affirmative indexing requirement contained in 5 U.S.C. § 552(a)(2)(A). Similarly, it must be determined whether the minutes contain matters covered by §§ 552(a)(2)(B) and (C).[19] Moreover, the possibility that the "Blue Minutes" may contain policy matters raises the question whether the Commission has adopted or incorporated by reference the reasoning contained in any of the documents prepared by staff or individual Commissioners for its consideration.[20] If so, these documents, too, would lose their predecisional character and fall outside the scope of exemption 5.[21]

### B. Memoranda Reflecting Communications with Expert Consultants

The district court found that the documents listed in Categories D, E, and H are also shielded from disclosure by exemption 5, but on a different rationale. The court held that these documents are exempted as attorney "work product."

It is well-established that exemption 5 was designed also to protect the work product of agency attorneys. *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 154–155, 95 S.Ct. 1504. *See also* S.Rep.No.813, *supra,* at 2.

The fundamental principles underlying contemporary understanding of the work product doctrine derive from *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 90 L.Ed. 1645 (1947). There the Court said, in pertinent part:

In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper presentation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. . . . Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.

*Id.* at 511, 67 S.Ct. at 393.

We do not suggest, of course, that the mere fact that an agency document was prepared by an attorney necessarily qualifies it as "work product." "The executive branch of our government employs an uncountable and ever-growing number of attorneys, and [exemption 5 of the FOIA] can hardly be understood as protecting everything they put on paper." *Kent Corp. v. NLRB,* 530 F.2d 612, 623 (5th Cir. 1976). Also, we recognize that this doctrine is not without its difficulties and many exceptions. *See generally* 8 Wright & Miller, Federal Practice and Procedures §§ 2021–2028 (1976). As the Supreme

---

**19.** *See* note 13 *supra* and accompanying text.

**20.** There is no evidence in the record concerning whether the Commission has adopted, ratified, or incorporated by reference in the "Blue Minutes" the reasoning in any of the other documents at issue. *Compare Grumman, supra* note 18, 421 U.S. at 185–186, 95 S.Ct. at 1501: "Chairman Hartwig testified:

'[W]hen the recommendation clearance of the Regional Board comes up on the Board agenda, the Board simply approves or disapproves the clearance. It does not adopt any of the memoranda that are before it. It does not ratify or adopt any of these staff memoranda. It simply, in the exercise of its judgment, says it is a clearance or it isn't a clearance. And there is no Board-adopted document which you could call an opinion.' " Such detailed information about the agency's decision-making process is essential, in our view, to a fair determination of the agency's exemption claims. *See also Sears, supra,* 421 U.S. at 138–142, 95 S.Ct. 150.

**21.** *See* note 11 *supra* and accompanying text.

Court has said, however, "[w]hatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which sets forth the attorney's theory of the case and his litigation strategy." *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 154, 95 S.Ct. at 1518.

■ The record establishes that the documents listed in two categories, D and E, fall well within the rule. First, as noted earlier, these memoranda were prepared by staff counsel for the Commission. J.A. 116a–117a. Second, they were prepared specifically for purposes of the analgesics cases. *Id.* Indeed, the index reveals that a substantial number of these documents were prepared by staff counsel after the complaint was issued against Bristol-Myers. J.A. 218a–220a. Finally, the affidavit states: "[T]he documents described in Categories D and E go to the very heart of complaint counsel's cases because they contain staff [counsel's] non-verbatim reports of interviews or conversations which, questions asked of, responses given by and correspondence with our expert consultants. In addition, they contain discussions as to the strengths and weaknesses of certain tests, studies and theories which both support and conceivably work against the Commission's allegations, as well as the staff's analysis of a particular expert's expertise." J.A. 116a–117a.

■ The documents in the third category, Category H, present a slightly different case, but we think the district court was nevertheless correct in concluding that they, too, are work product. These memoranda are notes taken by Commission counsel during "pre-trial discovery interviews of complaint counsel's expert witnesses con-ducted by attorneys for . . . American Home," another respondent in the analgesics cases. J.A. 119a. Since attorneys for the Commission posed no questions during these interviews, it cannot be said that the *interviews* themselves reveal the legal theories or trial strategy of Commission counsel. It is clear, however, that the *notes* were prepared by Commission counsel in contemplation of litigation, and we think the district court could properly accept the Commission's position that disclosure of such notes would reveal counsel's "mental impressions" and evaluations of the testimony given.

■ Bristol-Myers appears to concede that the work-product rule would ordinarily apply here but urges that we should take account of the company's particular need for the information these documents contain. FOIA, however, does not distinguish between litigants on the basis of their need for information. The House Report indicates that exemption 5 was intended to permit agencies to withhold intra-agency memoranda which would not "routinely be disclosed" in private litigation.[22] H.R.Rep. No.1497, *supra,* at 10. *See also Sears, supra,* 421 U.S. at 149 n. 16, 95 S.Ct. 1504; *Sterling Drug, Inc. v. FTC,* 146 U.S.App. D.C. 244, 250–251, 450 F.2d 698, 704–705 (1971).

■ Although we thus agree with the district court that the documents in these categories are work product, it does not necessarily follow that they may be withheld. *Sears* makes it clear that such memoranda lose the protection of exemption 5 to the extent that they have been incorporated by reference in a nonexempt "final opinion."[23] 421 U.S. at 154, 161, 95 S.Ct. 1504.

22. Also, we note that if Bristol-Myers does in fact require this information to prepare or strengthen its defense, our decision will not preclude the company from obtaining it. The ALJ, in refusing to disclose these documents under the FTC's discovery rules, *see* note 2, *supra,* stated that he would "entertain renewed request[s] for any specific document being excluded from production . . . if and when a need therefor for purposes of cross-examina-tion or defense preparation can be clearly demonstrated." J.A. 124a.

23. *See* note 11 *supra* and accompanying text. Bristol-Myers' final contention is that whether or not exemption 5 applies, the district court should have examined the documents at issue *in camera* to determine whether any portion of the materials consists of nonexempt, "reasonably segregable" information. Certainly, it has

## C. *Exemption 7(A)*

██ There would be no need for further proceedings, of course, if the "Blue Minutes" and any memoranda they may incorporate by reference would be protected in any event by exemption 7(A). This is the Commission's alternate contention, resolved for the most part against it in district court [24] and pressed again on appeal. We note that the Supreme Court left open in *Sears* the question whether exemption 7 applies to Advice and Appeals Memoranda deciding not to issue a complaint. 421 U.S. at 162–163, 95 S.Ct. 1504. The Court did rule, however, that a document protected by exemption 7 does not become disclosable solely because it is incorporated by reference in a "final opinion." *Id.* at 166, 95 S.Ct. 1504.

Without greater knowledge of the contents of the Blue Minutes and the purposes they are designed to serve, we cannot determine whether exemption 7(A) applies. This exemption, as amended in 1974,[25] protects "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings . . . ." Although minutes or "reflections" of the Commission's deliberations would appear to be something other than

---

long been the rule in this Circuit that non-exempt factual information in a document must be disclosed unless it is inextricably intertwined with exempt material. *See, e. g., Mead Data ·Central, Inc. v. Dept. of the Air Force (Mead Data I),* 184 U.S.App.D.C. 350, 368, 566 F.2d 242, 260 (1977); *Washington Research Project, Inc. v. Dept. of HEW,* 164 U.S.App. D.C. 169, 180, 504 F.2d 238, 249 (1974); *Bristol-Myers v. FTC,* 138 U.S.App.D.C. 22, 26, 424 F.2d 935, 939, *cert. denied,* 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970). In 1974, Congress expressly incorporated this requirement into FOIA, *see* P.L.No.93–502, § 2, 88 Stat. 1561, which now provides that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b) (1976). The district court was plainly aware of this requirement, and relied on the representations made by the Commission's affidavit that segregation of any factual portions of these materials would impinge on both the Commission's predecisional processes and its attorneys' thought processes. Affidavit of John Skiles, J.A. 114a. The Court found that segregation could not be accomplished without " 'compromising the private remainder of the documents.' " District Court Opinion at 4, J.A. 5a (*quoting EPA v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

We are satisfied that, with the possible exception of Category B, the so-called "Blue Minutes," the district court's decision to forego *in camera* inspection in this case was not an abuse of its discretion. First, as the court recognized, the Commission evidently responded to the FOIA request in good faith, and for the most part it supplied detailed descriptions of the documents and justifications, including hypothetical illustrations, for its claim that segregation was impracticable. J.A. 112a–120a, 208a–223a. *See, e. g., Mead Data I, supra,* 184 U.S.App.D.C. at 370 n. 59, 566 F.2d at 262 n. 59; *Vaughn v. Rosen, supra,* 157 U.S.App.D.C.

at 345–346, 484 F.2d at 825–826. Second, most of the documents in Categories A, C, D, F, G, and H were said to be exempt on both work-product and "deliberative process" privilege grounds. As we have indicated, these documents do appear originally to have been either work-product, or predecisional, or both, and we remand only to determine whether they have lost their exempt character by reason of incorporation by reference in the "Blue Minutes." In such circumstances, we think the district court could properly rely on the agency's representations that segregation of factual matters could not be reasonably accomplished. Even apart from the problem of impinging on the agency's predecisional processes, courts recognize that it is especially difficult to segregate facts and yet give effect to the exemption in work-product cases, since counsel's consideration and weighing of the facts is very much a part of his tactical and strategic analysis. *See Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1137–1138 (4th Cir. 1977); *Kent Corp. v. NLRB,* 530 F.2d 612, 623–624 (5th Cir. 1976).

24. The district court found that "[t]he Commission['s] index repeatedly invokes Exemption 7A in situations in which the exemption is not even arguably available." District Court Opinion at 3, J.A. 4a. It held that this exemption did not apply to Category A ("intra-agency memoranda"), but did apply to the documents in Categories D ("Interview reports of expert witnesses") and H ("Staff written reports of interviews by counsel"). It made no specific mention of exemption 7(A) in discussing the remaining categories.

25. Pub.L. 93–502, 88 Stat. 1563. Previously, this exemption shielded "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." 5 U.S.C. § 552(b)(7) (1970).

"investigatory records,"[26] we are reluctant to make this determination without more elucidation.

Similarly, there would be no point in our speculating about whether any documents that might be incorporated by reference in the Blue Minutes would qualify for nondisclosure under this exemption. Even assuming such documents were "investigatory records," the Commission would be required to demonstrate that release of the particular information they contain would "interfere with enforcement proceedings."[27] Such determinations should be made by the district court in the first instance on the basis of evidence supplied by the Commission.

### III. CONCLUSION

In accordance with our decision in *Ash Grove, supra,* the case must be remanded to the district court for *in camera* inspection of at least a representative sample of the "Blue Minutes" (Category B) to determine whether any portion of these minutes is disclosable under the principles outlined in this opinion, and, if so, for findings as to whether any other documents at issue are disclosable by reason of incorporation by reference. The district court may, if so advised, take additional evidence to determine whether exemption 7(A) applies to these materials.

*So ordered.*

MacKINNON, Circuit Judge, dissenting:

Since I do not perceive any significant fault in the district court's disposition of

this matter, I would affirm the judgment under review.

### I. THE DOCUMENTS IN QUESTION

The 327 documents in dispute, comprising some 765 pages (J.A. 4a n.2), are divided into nine categories (Maj.Op. at —— of 194 U.S.App.D.C., at 21 of 598 F.2d). *Category A* contains 17 documents, all of which are *intra-agency memoranda* relating to pending charges against Bristol-Myers, the companion cases to those charges, or previous investigations of similar cases (J.A. 114a–15a, 208a–16a). According to the index, these memoranda were prepared by staff attorneys or the heads of an FTC office or Bureau for submission to the Commission, individual Commissioners, or other FTC officials, and are recommendations or opinions pertaining to various aspects of the enforcement proceeding (J.A. 208a). *Category B* consists of over 100 "*blue minutes,*" which are staff directives from the Commission reflecting on trial strategy and other aspects of the Commission's deliberations (J.A. 115a, 216a). *Category C* contains *four memoranda from individual Commissioners* to the full Commission discussing such matters as weaknesses of the case, proposed revisions in the complaint, the relative merits of proceeding by adjudication as opposed to rulemaking, and other reflections on strategy and theories in the conduct of the enforcement proceeding (J.A. 115a–16a, 216a). *Category D* consists of approximately 150 non-verbatim *reports of interviews of expert witnesses by agency complaint counsel* (J.A. 116a–18a, 217a).

---

**26.** The post-amendment cases cited by the Commission as protecting "investigatory record" generally involve statements by potential witnesses in law enforcement proceedings. *See, e. g., Climax Molybdenum Co. v. NLRB,* 539 F.2d 63 (10th Cir. 1976); *Title Guarantee Co. v. NLRB,* 534 F.2d 484 (2d Cir.), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976).

**27.** See generally *NLRB v. Robbins Tire,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). Judge MacKinnon reads *Robbins Tire* to suggest that the sweep of Exemption 7(A) is as broad as an agency's own discovery rules in an enforcement proceeding. Dissent at 4. Our

disposition of this case makes it unnecessary to determine the precise scope of Exemption 7(A) as applied to the Blue Minutes. However, we would point out that Judge MacKinnon's view was adopted by only three members of the Supreme Court in *Robbins Tire* (concurring op. of Stevens, J., 437 U.S. at 243, 98 S.Ct. 2311) and that the majority's decision focused primarily on the peculiar danger of witness intimidation in NLRB proceedings, which supports the requisite finding that disclosure would "interfere with enforcement proceedings." *See id.* at 240–241, 98 S.Ct. 2311; *Title Guarantee Co. v. NLRB, supra,* 534 F.2d at 492.

*Category E* contains three *letters between agency complaint counsel and expert consultants.* These letters are follow-up letters to particular experts (J.A. 218a–20a). *Category F* referred to one letter discussing the dissatisfaction of a witness with his compensation; plaintiff's request for this document was withdrawn (J.A. 282a). *Category G* consists of three documents, which are *early drafts of the complaint and orders* issued in the proceeding (J.A. 221a). *Category H* consists of *notes taken by Commission attorneys of interviews of two experts* in connection with a companion case (J.A. 222a). *Category I* consisted of memoranda from files of the U.S. Pharmacopeial Convention; this request was withdrawn (J.A. 282a).

The seven categories remaining in controversy can be divided into two broad classes for purposes of analysis: (1) *Categories A, B, C, and G* consist of documents prepared by Commission staff, individual Commissioners, or the Commission itself during the process of deciding *how to proceed, if at all,* against analgesic manufacturers (see Maj.Op. at —— of 194 U.S.App.D.C., at 22 of 598 F.2d); and (2) *Categories D, E, and H* consist of documents prepared by staff counsel which contain reports and notes on communications, including interviews, with expert consultants contacted by the agency during the investigation (Maj.Op. at —— of 194 U.S.App.D.C., at 22 of 598 F.2d).

## II. EXEMPTION 7(A)

It is my view that Exemption 7(A) protects these documents from disclosure. The Commission pressed this argument before the district court, but its argument there was largely rejected.[1] The Commission argues Exemption 7(A) again on appeal. The majority note that the Supreme Court left open in *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), the question of whether Exemption 7 applies to Advice and Appeals Memoranda deciding *not* to issue a complaint, 421 U.S. 162–65, 95 S.Ct. 1504.[2] The majority also note that the Court did rule that a document protected by Exemption 7 "does not become disclosable solely because it is referred to in a 'final opinion,'" 421 U.S. at 166, 95 S.Ct. at 1524.[3] In my view, the proper scope of Exemption 7 for this situation was established in *NLRB v. Robbins Tire and Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).

In *Robbins Tire,* respondent had been charged in an unfair labor practice complaint issued by the Acting Regional Director of the NLRB with having committed numerous violations of § 8(a)(1) of the National Labor Relations Act. A hearing on the complaint was scheduled for late April, 1976. On March 31, 1976, respondent wrote to the Acting Regional Director, and requested pursuant to the FOIA that he make available for inspection and copying, at least seven days prior to the hearing, copies of all potential witnesses' statements collected during the Board's investigation. The request was denied on April 2 on various grounds, particularly Exemption 7(A).[4] An action was thereafter filed in the dis-

---

1. Exemption 7(A) was applied to documents in Categories D and H by the district court (J.A. 6a). It was held expressly inapplicable to the documents in Category A (J.A. 4a). In a footnote to the discussion of Category A, the district court stated that "[t]he Commission index repeatedly invokes Exemption 7A in situations in which the exemption is not even arguably available" (J.A. 4a n.5). The exemption was not discussed with respect to categories other than A, D, and H. *Compare* Maj.Op. at n.27.

2. Maj.Op. at ----- of 194 U.S.App.D.C., at 30 of 598 F.2d.

3. *Id.*

4. 5 U.S.C. § 552(b) provides:
   This section does not apply to matters that are—
   *    *    *    *    *    *
   (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings . . . . .

trict court, which held that Exemption 7(A) did not apply;[5] the Fifth Circuit affirmed.[6]

In determining whether the Board had met its burden of demonstrating that disclosure of the potential witnesses' statements "would interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7), the Court relied primarily on the fact that the NLRB had historically provided little prehearing discovery[7] and that failing to recognize the applicability of the exemption would "change the substantive discovery rules."[8] The Court stated:

> Our reluctance to override a long tradition of agency discovery, based on nothing more than an amendment to a statute designed to deal with a wholly different problem, is strengthened by our conclusion that the dangers posed by premature release of the statements sought here would involve precisely the kind of "interference with enforcement proceedings" that Exemption 7(A) was designed to avoid.

98 S.Ct. at 2325. In my view, the logic which underlies Robbins Tire—specifically, that the FOIA does not authorize the production of NLRB records that could not be obtained through the agency's normal discovery process during a law enforcement proceeding—applies to any law enforcement proceeding before any agency. It is my position that the FOIA does not authorize discovery greater than that available under the rules normally applicable to a law enforcement proceeding. If the statute authorized more discovery, it would "interfere" with the proceeding, and this is not what Congress intended.[9]

The facts of this case demonstrate that it is precisely the situation where the proposition which emerges from Robbins Tire should be applied. On February 23, 1973, the Commissioners of the FTC caused a complaint to be issued against Bristol-Myers for violations of sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45, 52 (J.A. 226a–251a). Plaintiff elected to contest the charges, and an adjudicative proceeding was commenced before an administrative law judge ("ALJ") (J.A. 112a). As part of its discovery, plaintiff in March, 1976, applied to the ALJ for the issuance of four subpoenas to the FTC or its employees, through which plaintiff sought discovery of a wide variety of FTC documents relating to the pending administrative proceeding (J.A. 129a–62a). On March 31, 1976, the ALJ directed the agency to make available to plaintiff most of the documents sought, but he denied plaintiff access to certain other documents on the ground that such material was privileged and not discoverable (J.A. 121a–25a, 135a–38a). In so ruling, the ALJ expressly relied upon the Commission's discovery rules, 16 C.F.R. §§ 3.31–.39, and its construction thereof. Plaintiff unsuccessfully sought reconsidera-

---

5. 92 L.R.R.M. 2586 (N.D.Ala.1976) 57 L.Ed.2d 159 (1976).

6. *Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d 724 (5th Cir. 1977).

7. 98 S.Ct. at 2324.

8. 98 S.Ct. at 2324.

9. *See* 98 S.Ct. at 2327. (Stevens, J., joined by Burger, C. J. and Rehnquist, J.):

> The "act of meddling in" a process is one of Webster's accepted definitions of the word "interference." A statute that authorized discovery greater than that available under the rules normally applicable to an enforcement proceeding would "interfere" with the proceeding in that sense. The Court quite correctly holds that the Freedom of Information Act does not authorize any such interference in Labor Board enforcement proceed-

ings. Its rationale applies equally to any enforcement proceeding. On that understanding, I join the opinion.

It was unnecessary to go this far to decide the narrow issue presented by *Robbins Tire,* but three Justices explicitly did so. It may be that, if presented with a case more like this one, this position will be adopted by more members of the Court. *Compare* Maj.Op. at n.27. *See also Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974):

> Interference with the agency proceeding opens the way to the use of the FOIA as a tool of discovery . . . over and beyond that provided by the regulations issued by the Renegotiation Board for its proceedings. . . . Discovery for litigation purposes is not an expressly indicated purpose of the Act.

tion by the ALJ of his discovery ruling, and the Commission declined plaintiff's request to accept an interlocutory appeal from the ruling (J.A. 126a–38a, 184a–204a, 206a).

Having failed to persuade the ALJ to reconsider his discovery ruling, plaintiff on May 6, 1976 (while its petition for an interlocutory appeal from the discovery ruling was pending before the Commission) made a broad FOIA request for virtually all material relating to the FTC's investigation of and proceedings against analgesic producers (J.A. 18a–20a). On May 11, plaintiff modified this request to exclude, *inter alia,* any records previously supplied it in discovery before the ALJ (J.A. 21a).

These records were not authorized to be disclosed by the normal discovery rules. Furthermore, they were "investigatory records compiled for law enforcement purposes." These records resulted from and reflected the investigative effort of the Commission in enforcing the Federal Trade Commission Act.[10] The 1974 amendment was not intended to be "a radical departure from existing case law under the Freedom of Information Act." Freedom of Information Act Source Book, S.Doc. 93–82, Subcommittee on Administrative Practice and Procedure, Senate Judiciary Comm., 93d Cong., 2d Sess. (1974), (hereafter "Source Book"), at 334 (Sen. Hart). The intent Congress had in 1966 to protect the Government's case from harm by the "premature release of evidence or information" continued through the 1974 amendment. *Id.,* at 333 (Sen. Hart).

Thus, these records were within the purview of Exemption 7(A), and their disclosure was not authorized by the normal discovery rules. Since I do not believe that the FOIA authorizes discovery greater than that made available by the agency's own discovery rules normally applicable in the law enforcement proceeding, I would hold that the documents in question need not be disclosed to plaintiff.

In my view, the legislative history of Exemption 7(A) clearly bears out such conclusion. As originally enacted in 1966, Exemption 7 removed from the coverage of the FOIA

> investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency.

5 U.S.C. § 552(b)(7) (1970). A basic concern of Exemption 7 was that law enforcement agencies should be allowed to keep certain records confidential, lest they be hindered in their investigations or placed at a disadvantage when it was time to present their case. Congress clearly wanted to prevent "harm [to] the Government's case in court," S.Rep.No.813, 89th Cong., 2d Sess. (1965), *reprinted in* Source Book, at 44, by not allowing "any earlier or greater access to the government's case *than he would have directly in such litigation or proceeding.*" H.R.Rep.No.1497, 89th Cong., 2d Sess. (1966), *reprinted in* Source Book, at 32 (emphasis added). In short, Exemption 7, as enacted in 1966, was not intended to disclose more records than an individual would be entitled to by the applicable discovery rules of the agency in the law enforcement proceeding.

However, this court in a series of cases [11] ruled that the court in an FOIA suit has no duty to inquire into whether nondisclosure of investigatory files would serve any of the purposes underlying Exemption 7. Therefore, in 1974, Congress amended Exemption 7 because it disapproved of the approach taken in those cases. The amending legislation, which affected FOIA in several respects, as reported out of the committees

---

**10.** In my view, the term "records" in Exemption 7 has the same intrinsic meaning as the term "records" in the remainder of the FOIA, that is, as a general matter, *any* recorded information in the possession of or owned by the federal government, whatever the content or format.

**11.** *Weisberg v. U.S. Dept. of Justice,* 160 U.S. App.D.C. 71, 489 F.2d 1195 (1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974); *Aspin v. Department of Defense,* 150 U.S.App.D.C. 231, 491 F.2d 24 (1973); *Ditlow v. Brinegar,* 161 U.S.App.D.C. 154, 494 F.2d 1073 (1974); *Center for National Policy Review on Race and Urban Issues v. Weinberger,* 163 U.S.App.D.C. 368, 502 F.2d 370 (1974).

did not recommend any changes in Exemption 7; the amendment instead resulted from a proposal on the floor of the Senate made by Senator Hart during Senate debate.

Senator Hart's amendment accomplished two things: (1) it substituted the word "records" for "files," thereby making it clear that courts were required to consider the nature of the particular document as to which the exemption was claimed, Source Book at 451; (2) it explicitly enumerated the purposes and objectives of the exemption, thereby *requiring reviewing courts to* "look[ ] to the reasons" for allowing the withholding of investigatory records before making their decisions. *Id.,* at 334. Thus, as stated in *Robbins Tire,* the thrust of the 1974 amendment to Exemption 7 was to make clear that it did not "endlessly protect material simply because it was in an investigatory file." 98 S.Ct. at 2321. In fact, the Court stated that the Hart amendment was identical in the respects there relevant to a proposal submitted during the hearings by the Administrative Law Division of the American Bar Association, one description of which the Court said suggested

> that *the release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against.*

98 S.Ct. at 2322 (emphasis added). Senator Hart stated specifically that Exemption 7(A) would apply

> whenever the Government's case in court—a concrete prospective law enforcement proceeding—would be harmed by the premature release of evidence or information.

Source Book, at 333. I think it reasonable to conclude that the 1974 amendment sought to preserve the purpose of the original 1966 enactment, and not to permit the disclosure of more records than an individual would be entitled to by the discovery rules applicable to the agency in the law enforcement proceeding.

The language of Exemption 7(A) takes on even greater force when it is considered that the enforcement proceeding here is *still going on.* This is a valid distinction which the Supreme Court has recognized can be considered in deciding whether Exemption 7(A) should be applied. In discussing the meaning of this exemption in light of the legislative history, the Court stated in *Robbins Tire* :

> Although much of the debate on this amendment [to Exemption 7] focused on the problems of access to "closed files," two of the four D.C. Circuit cases involved *files in still-pending investigations. Ditlow v. Brinegar, supra; Center for National Policy Review of Race & Urban Issues v. Weinberger, supra.* But we do not understand the thrust of the Board's argument to depend solely on its file being "open." Instead, the Board points to the particular nature of these proceedings and the imminence of an actual adjudicatory proceeding on the charge. Since Senators Kennedy and Hart carefully explained the amendment's purpose as being to eliminate a "wooden" and overly literal approach to the language of the exemption, *we do not read their reference to these two cases to mean that consideration of the pendency of an as-yet-unresolved charge to which the material sought relates is a factor that cannot be considered.*

98 S.Ct. at 2320 n.10 (emphasis added). *Robbins Tire* approved several circuit court decisions, *see* 98 S.Ct. at 2315 n.5, some of which noted the importance of the pendency of a law enforcement proceeding. In *Title Guarantee Co. v. NLRB,* 534 F.2d 484 (2d Cir. 1976), the court stated:

> We cannot envisage that Congress intended to overrule the line of cases dealing with labor board discovery in pending enforcement proceedings by virtue of a back-door amendment to the FOIA when it could very easily have done so . . . by a blanket enactment pertaining to discovery *in pending administrative enforcement proceedings.*

534 F.2d at 491–92 (emphasis added).[12] Exemption 7(A) has particular relevance when a law enforcement proceeding is pending, as is the case here.

### III. EXEMPTION 5

Since in my view that Exemption 7(A) requires affirming the district court's judgment, I would not need to reach the question of the applicability of Exemption 5. *See* Maj.Op. at —— of 194 U.S.App.D.C., at 30 of 598 F.2d. Yet even with respect to Exemption 5, I do not perceive a significant fault with the result reached by the district court.

I agree with much of the majority's discussion of the scope of Exemption 5. That exemption "withholds from a member of the public documents which a private party could not discover in litigation with the agency." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 148, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). The Exemption is aimed at protecting "confidential intra-agency advisory opinions" the disclosure of which would injure "the consultative functions of government," *id.,* at 149, 95 S.Ct. 1504, and in preserving the attorney-client and attorney work-product privileges generally available to all litigants, *id.* See Maj.Op. at —— of 194 U.S.App.D.C., at 23 of 598 F.2d. Properly construed, Exemption 5 requires the disclosure of all documents which embody the agency's "effective law and policy," and permits the withholding of documents which "reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Sears, supra,* 421 U.S. at 153, 95 S.Ct. at 1517. As a rough guide, predecisional documents are protected, while postdecisional documents are not. *Id.,* at 150–53, 95 S.Ct. 1504, Maj.Op. at —— of 194 U.S.App. D.C., at 23 of 598 F.2d.

In *Sears,* the Court ruled that memoranda prepared by the General Counsel for the National Labor Relations Board (NLRB) deciding *not* to issue a complaint must be disclosed under the FOIA. *Sears, supra,* 421 U.S. at 155–59, 95 S.Ct. 1504. Against the General Counsel's contention that the memoranda represented only the first step in litigation, the Court stated:

> Plainly, an Appeals Memorandum is the first step in litigation only *when the appeal is sustained and it directs the filing of a complaint*; . . .

*Id.,* at 157, 95 S.Ct. at 1520. The Court concluded as follows:

> [T]hese memoranda are "final opinions" made in the "adjudication of cases" which must be indexed pursuant to 5 U.S.C. § 552(a)(2)(A). The *decision to dismiss a charge* is a decision in a "case" and constitutes an "adjudication": and "adjudication" is defined under the Administrative Procedure Act, of which 5 U.S.C. § 552 is a part, as "agency process for the formulation of an order," 5 U.S.C. § 551(7); an "order" is defined as "the whole or a part of a *final disposition,* where affirmative [or] negative . . . of an agency in a matter . . .," 5 U.S.C. § 551(6) (emphasis added); and *the dismissal of a charge,* as noted above, is a "final disposition." Since an Advice or Appeals Memorandum explains the reasons for the "final disposition" it plainly qualifies as an "opinion"; and falls within 5 U.S.C. § 552(a)(2)(A).

*Id.,* at 158–59, 95 S.Ct. at 1520 (emphasis added).

However, the Court in *Sears* also ruled that memoranda "which *direct the filing of a complaint* . . . *fall within the coverage of Exemption 5.*" *Id.,* at 159, 95 S.Ct.

---

12. It should be noted that the court limited its holding to the NLRB context. 534 F.2d at 492. I believe that holding should not be so limited.

I also agree with *United States v. Murdock,* 548 F.2d 599 (5th Cir. 1977), which involved an appeal from a criminal tax conviction:

> We hold that the discovery provisions of the Federal Rules of Criminal Procedure and the FOIA provide two independent schemes for

obtaining information through the judicial process. Although information obtained through the FOIA may be useful in a criminal trial, we find that the FOIA was not intended as a device to delay ongoing litigation or to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure.

548 F.2d at 602.

at 1521; emphasis added. The Court indicated that it reached that conclusion only because the decisionmaker, namely, the General Counsel, had to become a litigating party to the case with respect to which he had made his decision, and that this fact invoked the attorney's work-product policies covered by the exemption. *Id.*, at 160, 95 S.Ct. 1504.

It is significant, in my view, that the documents disclosed in *Sears* involved decisions not to file complaints which *ended the adjudicatory process.* Here, the adjudicatory process continues. There is no absolute barrier to amending the complaint, perhaps to include charges that the Commission as an initial matter chose not to include in the complaint at this time. *See* 16 C.F.R. § 3.15(a) (amendments of pleadings, including complaints). While it is true that the FTC apparently terminated an early effort to deal with alleged violations in the analgesics industry by rule, and while the FTC at this time has concluded that certain charges should not be included in the complaint, it seems to me that these conclusions are not "final" until the proceeding has come to an end or has been finalized in some definite way.

Because I do not believe that a final disposition has been made with respect to the records which appellant seeks, I would hold that the documents are predecisional and reflective of the agency's group thinking in the process of working out its policy and determining what action to take. This is not a situation where the information will be forever hidden from the public; rather, in due course, the information will be available once the final decision is rendered. Discovery for litigation purposes not being a stated purpose of the Act, *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974), I do not see that the purpose of the Act is thwarted by such result.

Also, I agree with the majority's conclusion that the documents in categories D, E, and H fall well within the category of work-product. Maj.Op. at —— of 194 U.S. App.D.C., at 29 of 598 F.2d. Because I

do not believe that the Commission has issued a "final opinion" which might render such work-product documents disclosable, *see Sears, supra,* 421 U.S. at 161, 95 S.Ct. 1504, I find here an independent basis for applying the fifth exemption. And I find no reason to remand the case for further consideration on this point.

For the reasons stated in the foregoing opinion, I respectfully dissent.