**William M. BRINTON, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF STATE et al., Defendants.**

Civ. A. No. 78–0112.

United States District Court,
District of Columbia.

June 12, 1979.

As Amended Sept. 21, 1979.

536

James M. Sack, Washington, D. C., for plaintiff.

Karen I. Ward, Asst. U. S. Atty., JoAnn J. Dolan, U. S. Department of Justice, Washington, D. C., for defendants.

MEMORANDUM

OBERDORFER, District Judge.

## I. BACKGROUND

This case arises under the Freedom of Information Act (FOIA).[1] By letter dated October 4, 1977, plaintiff requested from defendant:

1. All opinions written by the Counselor or [Legal Advisor] to the Department of State . . . concerning the legal status of the West Bank, the Golan Heights and the Gaza Strip since June, 1967.

2. Any legal opinion of the Counselor . . . tending to support the view that the West Bank, the Golan Heights or the Gaza Strip is "occupied territory" under principles of public international law; or is not "occupied territory" . . ..

3. The Memorandum of Understanding between the United States and Israel in 1975 and any legal opinion of the Counselor dealing with its effect . ..

4. Any legal opinion of the Counselor dealing with United Nations Resolution 242 . . ..

The final paragraph of plaintiff's letter stated:

"To avoid any misunderstanding, my request relates to legal opinions prepared for the Secretaries of State . . .."

In response to plaintiff's request, the Freedom of Information Act Staff of the Department of State caused the files of the Foreign Affairs Document and Reference Center and the files of the Assistant Legal Adviser for Near Eastern and South Asian Affairs to be searched for appropriate documents. Affidavit of Barbara Ennis, Director, Freedom of Information Staff, May 8, 1978 ("Ennis affidavit") at 2. As a result of the search, defendants determined that nine documents were responsive to plaintiff's FOIA request, broadly construed. One document (document 6) was released in its entirety to plaintiff on January 10, 1978. Ennis affidavit, exhibit H. The remaining eight documents were withheld in whole or in part pursuant to exemptions (b)(1)[2] and (5)[3] of FOIA.

Document No. 1 is a Memorandum of Agreement between the Governments of Israel and the United States.

Document No. 2 is a four-page memorandum, entitled "Political and Legal History of the West Bank and Jerusalem."

Document No. 3 is a four-page memorandum, entitled "The Legal Status of the Israeli Presence in Jerusalem and the West Bank."

Document No. 3a is a five-page memorandum entitled "Withdrawal of Israeli Forces from Occupied Territories," discussing the application of general principles of the law of war to Israel's occupation of territories during the 1967 War.

Document No. 4 is a four-page memorandum, entitled "Boundaries," discussing legal considerations governing the status of Israel's territorial boundaries.

Document No. 5 is a six-page memorandum, entitled "Jerusalem," discussing the competing Arab and Israeli claims to Jerusalem.

Document No. 7 is a seven-page memorandum, entitled "Legal Status of Israel's Boundaries and of the West Bank," discussing the legal status of Israel's territorial boundaries and the legal merits of Jordan's claims to the West Bank.

Document No. 8 is a 26-page memorandum, entitled "The Status Under Interna-

---

1. 5 U.S.C. § 552 (1976).

2. Exemption (b)(1) provides that FOIA does not apply to matters that are

"(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order . . .."

3. Exemption (b)(5) provides that FOIA does not apply to matters that are

"inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . .."

tional Law of Israeli Settlements Located in Territories Occupied by Israel During the 1967 War," discussing the rules of International law governing belligerent occupation with specific application to the legal status of Israeli civilian and military settlements in occupied territory. *See generally* Affidavit of Ambassador Alfred Atherton, Jr., March 20, 1979, ("Atherton affidavit"), attached as Appendix A to this Memorandum, at 7–15.

On January 23, 1978, plaintiff filed this lawsuit to enjoin defendants from withholding those portions of the eight documents identified as responsive to his FOIA request. By Memorandum and Order of November 30, 1978, the Court ruled that it had jurisdiction and denied defendants' motion to dismiss for failure to exhaust administrative remedies. Nevertheless, the Court directed defendants to submit the withheld documents to the Council on Classification Policy of the Department of State, the body with responsibility for deciding appeals for denials of FOIA requests, for review in light of Executive Order No. 12065, the Executive Order on classification which superseded Executive Order 11652 on December 1, 1978. Memorandum and Order, November 30, 1978.

In response to the Court's Order, the eight withheld documents were reviewed by the Legal Adviser's office, the Council on Classification Policy and Ambassador at Large, Alfred Atherton, Jr. As a result of that review, the following additional information was released to plaintiff: Document No. 1, Memorandum of Agreement between the Governments of Israel and the United States, was released in its entirety. Second Affidavit of William Blair, Jr., Senior Deputy Assistant Secretary for the Bureau of Public Affairs of the Department of State, March 2, 1979 ("Second Blair affidavit"), exhibit A. The text of Document No. 2, a footnote quoting a Security Council resolution in document No. 5 and various portions of documents Nos. 7 and 8 were also released to plaintiff. Second Blair affidavit, exhibit B and attachments. During the course of the review, Ambassador Atherton, with the approval of the Council on Classifi-

cation Policy, reclassified as CONFIDENTIAL certain portions of document No. 3, all of document No. 4, all of formerly declassified portions of documents Nos. 3a, 5 and 7, and all but one formerly declassified portion of document No. 8. Atherton affidavit at 4. Defendants have submitted a revised index reflecting these changes and a detailed affidavit by Ambassador Atherton, indicating the reasons for them. The Atherton affidavit states, among other things:

> It is now the Department of State's considered opinion that the release of any portion of the documents that remain withheld . . . could reasonably be expected to cause identifiable damage to the national security. It has become apparent within the context of the peace negotiations that disclosure of Department legal memoranda concerning the Middle East conflict can have significant adverse impact on the course and conduct of those negotiations. . . . The same considerations will continue to apply following signature and ratification of the Treaty of Peace between Israel and Egypt since this agreement, as President Carter has said, is part of a larger, comprehensive peace.

Atherton affidavit at 3–4.

Issue is joined by defendants' motion for summary judgment. In addition to his opposition to defendants' motion for summary judgment plaintiff has moved to make discovery pursuant to 56(f) Fed.R. Civ.P. Plaintiff's Motion to make discovery, February 26, 1979. In light of defendants' good faith, relatively detailed and nonconclusory affidavits submitted in support of their motion for summary judgment, the Court chooses, in its discretion, to forego discovery and to award summary judgment on the basis of defendants' submissions. *See Goland v. CIA*, 197 U.S.App. D.C. —— at ——, 607 F.2d 339 at 352 (1978); *see also Exxon v. F. T. C.*, 466 F.Supp. 1088 at 1092–1093 (D.D.C.1978), and cases cited therein. Accordingly, plaintiff's motion to make discovery pursuant to 56(f) Fed.R.Civ.P. will be denied.

■ Plaintiff has also "urged" the Court to "exercise its right to make an *in camera* review" of the withheld documents, without any indication as to the purpose that would be served by such review. Plaintiff's Reply In Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, May 22, 1978 ("Plaintiff's Opposition") at 15. The power of a district court to order *in camera* review of documents in a FOIA case is discretionary. *Ray v. Turner*, 190 U.S.App.D.C. 290, 298, 587 F.2d 1187, 1195 (1978). That power should not be used routinely "on the theory that 'it can't hurt'", but should be reserved for situations where "the district judge believes that *in camera* inspection is needed in order to make a responsible *de novo* determination on the claims of exemption." *Id.* In the present case, there are no allegations of bad faith and defendants' descriptions of the withheld documents and the proffered justification for their exemption are sufficiently clear and detailed so as to make *in camera* review unnecessary. *See Mead Data Cent., Inc. v. Department of Air Force*, 184 U.S.App.D.C. 350, 370, 566 F.2d 242, 262 (1975); *Bristol-Myers Company v. F. T. C.*, 194 U.S.App.D.C. 99 at 110, 598 F.2d 18 at 29 n. 23 (1978); *Mervin v. F. T. C.*, 192 U.S.App.D.C. 212, n. 2, 591 F.2d 821, 826 n. 2 (1978).

## II. Findings of Fact and Conclusions of Law

In a FOIA case, as in any other case, summary judgment may be granted only if the moving party establishes that

" 'no substantial and material facts are in dispute and that he is entitled to judgment as a matter of law.' "

*Founding Church of Scientology of Washington, D. C. v. National Security Agency*, slip op. at 25 (D.C.Cir. May 15, 1979). Accordingly, in order to prevail on its motion for summary judgment in a FOIA suit an agency defendant

" 'must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.' "

*Founding Church of Scientology, supra,* slip op. at 26.

In the present case, neither plaintiff nor the showing of defendants raises or reveals any issue of inadequacy or bad faith in the search for documents responsive to plaintiff's FOIA request.[4] Defendants' Ennis affidavit indicates, and plaintiff does not dispute, that the appropriate files of the Department of State were searched for responsive documents. Moreover, defendants' submissions indicate that plaintiff's request was construed "broadly" and in a non-technical manner. *See* Ennis affidavit, exhibits B and F. There is no substantial dispute that the original nine documents identified by defendants are all the documents that fairly respond to plaintiff's FOIA request. The remaining questions therefore concern whether those portions of identified documents not produced have been properly withheld pursuant to the exemptions contained in FOIA.

### A. Attorney-Client Privilege

■ Defendants primarily rely on the attorney-client privilege for the continued withholding of each portion of the remaining seven documents at issue: documents 2, 3, 3a, 4, 5, 7 and 8. Third Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment, March 20, 1979, at 20. The attorney-client privilege may provide a basis for withholding information pursuant to exemption (b)(5) when the information consists of

"confidential communications between an attorney and his client relating to a

---

**4.** Plaintiff previously disputed the adequacy of defendants' search on the basis of a supposed document not identified by defendants. Plaintiff later abandoned this claim, stating that he was prepared to stipulate that no such document exists. Plaintiff's Memorandum in Opposition to Defendant's Motion for a Protective Order, March 31, 1978, at 5.

legal matter for which the client has sought professional advice."

*Mead Data Cent., Inc. v. Department of Air Force,* 184 U.S.App.D.C. 350, 360, 566 F.2d 242, 252 (1977). Accordingly, in order to qualify for a (b)(5) exemption pursuant to the attorney-client privilege, withheld information must (1) be the product of an attorney-client relationship and (2) be maintained as confidential between the attorney and his client; if the information has been or is later shared with third parties, the privilege does not apply. *Mead Data, supra,* 184 U.S.App.D.C. at 361, 566 F.2d at 253.

■ In the present case, defendants have attested, by affidavits of Lee R. Marks, Deputy Legal Adviser of the Department of State, May 8, 1978 ("Marks affidavit") and Ambassador Atherton that each of the withheld documents is an internal memorandum of the Department of State, prepared by attorneys for the use of their clients in the Department, the purpose of which is to offer legal advice relating to Middle East diplomacy. Atherton affidavit at 5–6; *see also* Marks affidavit at 3–4. As the Atherton affidavit states:

> "The legal documents at issue in this case have been prepared by the Department's attorneys for me and for other officials with responsibility for handling Middle East Diplomacy, or in connection with the attorneys' advice to and representation of senior Department clients in furtherance of their official responsibilities."

Atherton affidavit at 5. The Court's *de novo* examination of the titles and descriptions of the documents concerned, in the context of plaintiff's FOIA request for "legal opinions" prepared by the Legal Adviser, corroborates that these documents are the product of an attorney-client relationship.

With respect to the confidentiality of the information withheld, plaintiff takes the position that defendants have "waived" any claims of privilege or confidentiality by virtue of the Secretary of State's "repeated public statements regarding the legal status of the Israeli settlements in the Sinai and elsewhere."

Plaintiff's Amendment to Complaint, February 24, 1978, at XIII. Plaintiff makes the same point with respect to legal advice he asserts was incorporated in a published letter of the Legal Adviser, Herbert J. Hansell, to the Chairman of the House Subcommittees on International Organization and on Europe and the Middle East, dated April 21, 1978. Plaintiff's Opposition, Appendix A. Plaintiff claims that

> "the Hansell Memorandum purports to provide a legal analysis in support of the Defendant's (sic) political position and, in so doing, implicitly waives Defendant's prior claims of B(1) and B(5) Exemptions."

Plaintiff's Opposition at 11. Public statements made by the Secretary of State or other officials in reliance upon (or contrary to) legal advice provided through legal advisors obviously do not "waive" the attorney-client privilege or make the privilege inapplicable. The Hansell Memorandum does not cite or refer to any of the documents withheld by defendants. The Hansell Memorandum cites only publicly available sources in support of the positions taken therein. Plaintiff does not allege that defendants have made any of the withheld documents or their contents available to "non-client" third parties, nor is there any evidence to this effect.

Furthermore, the Atherton affidavit states that officials in the Department of State require and rely on "continued confidentiality" of communications and advice received from the Legal Adviser's Office. Atherton affidavit at 6. The fair and unchallenged inference of this representation is that the documents have been treated as confidential within the Department of State and have not been shared with non-client third parties. *See* Reply to Plaintiff's Memorandum in Opposition. April 20, 1979 at 3. Moreover, in the present case, all but a few portions of the documents withheld have been and are currently classified as CONFIDENTIAL, thereby further confirm-

ing the restricted and confidential nature of the majority of the documents. Document Disposition Index, Appendix A, Third Supplemental Memorandum in support of defendants' motion for summary judgment, March 20, 1979; Atherton affidavit at 2–18. As the Atherton affidavit states:

> The ability of senior Department officers to obtain the needed internal assessments of legally relevant history, guidance on applicable legal principles, advice on the formulation, phrasing, and justification of positions, and counsel related to operational decisions, depends in large part on their ability to rely on continued confidentiality and on an understanding that this will remain an internal process to the extent deemed necessary

Atherton affidavit at 6.

Accordingly, for all of the reasons mentioned above, the Court concludes that the withheld documents, including those portions not currently classified as CONFIDENTIAL, fall within the attorney-client

privilege and therefore within exemption (b)(5).[5]  *See Mead Data, supra,* 184 U.S. App.D.C. at n. 24, 566 F.2d at n. 24.

### B.  *Segregability*

■  Because the focus of FOIA is "information, not documents," an agency "cannot justify withholding an entire document simply by showing that it contains some exempt material."  *Mead Data, supra,* 184 U.S.App.D.C. at 368, 566 F.2d at 260.  The agency "must provide a reasonable segregation as to the portions of the document that are involved in each of its claims for exemption."  *Ray v. Turner,* 190 U.S.App.D.C. 290, 587 F.2d 1187 (1978).  The burden of satisfying this requirement is lighter with respect to some privilege claims than others, however.  In the case of the attorney-client privilege, our Court of Appeals has noted that

> "the attorney-client privilege permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of

---

**5.** Plaintiff takes the position that, notwithstanding that all portions of the documents withheld by defendants may be entitled to exemption under (b)(5) of FOIA, this exemption has been lost since the documents

> "were used extensively in the preparation of the Hansell Memorandum and were incorporated therein to a degree which constitutes adoption  .   .   .  [The Hansell Memorandum] represents the public disclosure of a final agency position."

Plaintiff's Opposition at 19–12.  In support of his position plaintiff relies on the Supreme Court's decision in *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).  That case held that if an agency "chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it [is covered by] some exemption other than Exemption 5." (emphasis in original) 421 U.S. at 161, 95 S.Ct. at 1521–1522.

Plaintiff has alleged, however, only that the documents in question "were used extensively" in the preparation of the Hansell Memorandum and were "incorporated" therein "to a degree which constitutes adoption".  Plaintiff does not allege that the documents were "expressly" adopted or incorporated by reference in the

Hansell Memorandum, for example, by being "'publically cited by an agency as the role basis for agency action'" or "formally incorporated as part of a final order."  *Schwartz v. Internal Revenue Service,* 167 U.S.App.D.C. 301, 303–304, 511 F.2d 1303, 1305–1306 (1975).  Furthermore, inspection of the Hansell Memorandum reveals that it neither expressly adopts any of the withheld documents nor incorporates any of them by reference.  Neither plaintiff's allegations nor evidence in the record provides any foundation for the conclusion that the documents withheld have been "expressly" adopted or incorporated by reference in a final opinion.

Moreover, although the parties do not address this point, the Supreme Court in *N.L.R.B. v. Sears, Roebuck & Co.* was concerned with the "interplay of exemption 5 with the affirmative provisions of FOIA", in particular, 5 U.S.C. § 552(a)(2)(A), requiring an agency to make available for inspection and copying "'final opinions  .   .   .  made in the adjudication of cases.'"  *Bristol Myers Company v. F. T. C.,* 598 F.2d 18 at 27–28; *and see Renegotiation Board v. Grumman Aircraft,* 421 U.S. 168, n. 21, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975).  The Hansell Memorandum, of course, is not a final opinion "made in the adjudication" of any case, and the relevance of *N.L.R.B. v. Sears, Roebuck & Co.* may therefore be open to question.

the underlying facts, while the deliberative process . . . does not permit the nondisclosure of underlying facts unless they would indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process."

*Mead ·Data, supra,* 184 U.S.App.D.C. at n. 28, 566 F.2d at n. 28. *See also Mervin v. F.T.C.,* 192 U.S.App.D.C. 212, 217, 591 F.2d 821, 826 (1978).

In the present case, the Atherton affidavit and defendants' Document Disposition Index describe the documents withheld in considerable detail, thereby enabling the Court to engage in meaningful, *de novo* review of defendants' claim that

"No segregable portion [of any document] may reasonably or practicably be released . . .."

Atherton affidavit at 8. For example, document No. 3a is described in the Atherton affidavit as a five-page legal memorandum dated January 16, 1974, entitled "Withdrawal of Israeli Forces from Occupied Territories." It discusses the general principles of the law of war and the use of force as they apply to the June, 1967 Arab-Israeli War, including the legality of Israel's occupation of territories during the 1967 War. The document is divided into three segments: "Issue" (page 1), "Arguments" (pages 2–5) and "Comment" (page 5). The "Issue" section is described as setting forth the relevant provisions of the law in such a way as to reveal the legal opinion of the author as to the basic premises and principles that govern the subject of the memorandum. The "Arguments" section applies the author's choice and interpretation of the law to the topic of discussion and also analyzes the conflicting interpretations of the parties involved. The "Comment" section sets forth in two sentences the personal opinions and predictions of the author. Atherton affidavit at 9–10.

This brief but informative sketch of document No. 3a is representative of defendants' descriptions of each withheld document, particularly the descriptions contained in the Atherton affidavit. These descriptions, in the context of the creation of the documents, their sensitive subject matter and generally classified status, corroborate Ambassador Atherton's sworn representation that there are no non-exempt, reasonably segregable portions of any withheld document and that release of any reasonably segregable portion of any withheld document would disclose information, factual or advisory, protected by the attorney-client privilege. Accordingly, the Court concludes that defendants are entitled to summary judgment on the issue of segregability. *See Mead Data, supra,* 184 U.S.App. D.C. 367–370 at n. 28, 566 F.2d 259–262; *see also Mervin, id.*

### C. *Names of Attorneys*

■ Defendants have withheld the names of the attorneys who prepared each of the identified documents. In the case of document No. 2, the name of the preparing attorney is the only portion of the document not released to plaintiff. Atherton affidavit at 7; Document Disposition Index, document # 2. Although defendants have claimed the (b)(5) exemption to justify this non-disclosure, the attorney-client privilege does not suggest itself as the most appropriate basis for an exemption. Defendants have cited no cases in which the name of a government attorney has been specifically held exempt pursuant to the attorney-client privilege.

The foundation for defendants' refusal to divulge the names of the attorneys who prepared the legal memoranda at issue here rests on an appreciation of the fact that disclosure of these lawyers' identities

"in association with [their] internal advice could inhibit the candor of agency staff in the future."

Atherton affidavit at 7. The interest of the Department of State in candid discussion in the course of formulating foreign policy is protected by the deliberative process privilege. That privilege

"attaches to inter- and intra-agency communications that are part of the deliberative process preceding the adoption and promulgation of an agency policy." *Jordan v. United States Dept. of Justice,* 192 U.S.App.D.C. 144, 163, 591 F.2d 753, 772 (1978). In this case the documents at issue are part of the formulation of United States foreign policy in the Middle East. *See generally* Atherton affidavit. The documents are "predecisional" and "deliberative" in the sense that they are part of the working papers of the Department of State in its ongoing negotiations in the Middle East. *See Jordan, supra,* 192 U.S.App.D.C. at 165, 591 F.2d at 774; *compare Mead Data, supra,* 184 U.S.App.D.C. at 365, 566 F.2d at 257. Under these circumstances disclosure of the names of the attorneys authoring the documents could subject them to inhibiting public pressures. Even the threat of such publicity could impair the deliberative process within the Department of State. Accordingly, the names of the attorneys who authored the documents in question are properly withheld pursuant to the deliberative process privilege and exemption (b)(5). *See Montrose Chemical Corp. v. Train,* 160 U.S.App.D.C. 270, 275–278, 491 F.2d 63, 68–71 (1974); *Mead Data, supra,* 184 U.S.App.D.C. at 364, 566 F.2d at 256.

### D. *Conclusion*

For all of the above reasons, defendants are entitled to summary judgment. An appropriate Order accompanies this Memorandum.