**William M. BRINTON, Appellant,**

v.

**DEPARTMENT OF STATE et al., Appellees.**

**No. 79–2032.**

United States Court of Appeals, District of Columbia Circuit.

Argued 9 June 1980.

Decided 3 Sept. 1980.

Rehearing Denied Dec. 9, 1980.

James M. Sack, Washington, D. C., for appellant.

JoAnn Dolan, Atty., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed, and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees.

Before TAMM, ROBINSON and WIL-KEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

This appeal arises from the district court's denial of appellant William M. Brinton's Freedom of Information Act (FOIA) suit for State Department documents. Appellant requested legal opinions prepared for the Department of State by the Department's Office of the Legal Adviser, con-cerning United States policy on issues involving Israel and the West Bank, the Golan Heights, and the Gaza Strip. After the State Department released several request-ed documents or parts of documents to ap-pellant, the district court found the remain-der of the requested documents to be within Exemption 5 of the FOIA for inter- or intra-agency memoranda not available by law to a party. The court held the docu-ments to be not available under Exemption 5 on grounds of attorney-client privilege, and also found them to be within the delib-erative process protected by Exemption 5. The district court accordingly granted sum-mary judgment to the Department. From this judgment Brinton now appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1977 appellant filed a request with the State Department for opinions of the Office of the Legal Adviser concerning the legal status of territory occupied by Israel since June 1967. Among the documents request-ed by appellant were a Memorandum of Agreement between the United States and Israel dating from 1975 and any opinions concerning United Nations Resolution 242.[1]

The State Department found nine docu-ments responsive to appellant's request and initially released one of them, withholding the others pursuant to FOIA Exemptions 1 and 5. Exemption 1 protects from FOIA disclosure those matters "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign poli-cy and (B) are in fact properly classified pursuant to such Executive order."[2]

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[3]

In January 1978 appellant filed suit in United States District Court to compel dis-

---

1. *See Brinton v. United States Dep't of State,* 476 F.Supp. 535, 537–38 (D.D.C.1979).

2. 5 U.S.C. § 552(b)(1) (1976).

3. 5 U.S.C. § 552(b)(5) (1976).

closure of those documents withheld by the State Department. By Memorandum and Order dated 30 November 1978, from which no appeal was taken, the district court rejected the government's claim that appellant had failed to exhaust his administrative remedies. The court further held, however, that the Exemption 1 claim should be referred to the State Department's Council on Classification Policy to review the substantive and procedural validity of classification in light of recently enacted Executive Order No. 12,038.[4]

Upon review by the Council, the State Department released to appellant the requested Memorandum of Agreement between the governments of Israel and the United States, as well as portions of several other requested documents. The Department continued to claim Exemption 5 protection for all the remaining withheld documents and portions of documents, and continued to claim Exemption 1 coverage for the bulk of the documents. The Department submitted several affidavits to the district court to support these claims.

On 12 June 1979 the district court ruled on the Government's motion for summary judgment as to its FOIA exemption claims. The court did not decide the applicability of Exemption 1, but found instead that all the withheld documents were within Exemption 5. As its primary basis for withholding the remaining documents under Exemption 5, the court found all portions of the documents to be within the attorney–client privilege. The court found the documents to be the product of an attorney–client relationship between the Secretary of State and the Legal Adviser, and further found the documents to be maintained as confidential between attorney and client, citing this

court's opinion in *Mead Data Central, Inc. v. United States Department of Air Force*.[5] As an additional ground for the application of Exemption 5, the court found the documents to be predecisional and deliberative working papers of the Department of State, and thus within the deliberative process basis for application of Exemption 5.

In granting summary judgment to the Government, the district court determined the State Department's affidavits to be sufficiently clear and detailed to establish the applicability of Exemption 5. The court found no allegations or evidence of bad faith on the part of the Department. For these reasons the court granted summary judgment without acceding to appellant's request for an *in camera* inspection of the document.[6]

## II. ANALYSIS

Both congressional intent and judicial precedent establish the attorney–client privilege as a ground for applying Exemption 5.[7] Following this circuit's *Mead Data* opinion, the district court in this case held that the attorney–client privilege applies only when information is the product of an attorney–client relationship and is maintained as confidential between attorney and client.[8]

There is an additional limitation on the attorney–client privilege, however, for those communications that originate from the lawyer rather than from the client. *Mead Data* stated that when the attorney communicates to the client, the privilege applies only if the communication "is based on confidential information provided by the client."[9]

This limitation applies generally to attorney–client privilege cases whether or not in

---

4.  *See Brinton v. United States Dep't of State*, 476 F.Supp. 535 (D.D.C.1978), *reprinted in* Joint Appendix (J.A.) at 73, 76–77.

5.  566 F.2d 242 (D.C.Cir.1977).

6.  *See Brinton v. United States Dep't of State*, 476 F.Supp. 535, 538–43 (D.D.C.1979).

7.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975); *Mead Data Cent., Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 252–53 (D.C.Cir.1977); S.Rep.No. 813, 89th Cong., 1st Sess. 2 (1965).

8.  *Brinton v. United States Dep't of State*, 476 F.Supp. 535, 539–40 (D.D.C.1979).

9.  *Mead Data Cent., Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 254 (D.C.Cir.1977).

the context of the FOIA. For example, the Eighth Circuit has limited the privilege to communications from the attorney that are "related to the confidence" from the client.[10] A district court decision applied the privilege to a document from counsel that was "based, in part at least, upon a confidential communication from an officer of defendant to counsel." [11]

■ Whatever the precise formulation of this standard, it is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.[12] To allow the contrary rule would permit agencies to insulate facts from FOIA disclosure by simply routing them through lawyers in the agency and invoking the attorney–client privilege.

■ In the present case the district court did not make any finding as to whether the withheld documents satisfied this limitation on the privilege for communications from attorney to client. The opinion contains no finding that the communications are based on or related to confidences from the client, nor is there a finding that the documents are not based on facts acquired from other persons or sources. Further, the answer to these questions does not appear clearly on the record before us. We therefore cannot affirm the district court's judgment on the basis of the attorney-client privilege.

■ The district court, however, stated a second rationale for applying Exemption 5

when it exempted the names of attorneys who authorized the requested documents. The court exempted these names on the ground that the documents in question were predecisional and deliberative.[13] If these agency records are indeed deliberative, it is appropriate to apply Exemption 5 to the documents themselves, as well as to the names of their authors.

■ The deliberative process ground for Exemption 5 protects the decision–making process of an agency,[14] in the sense of communications related to the agency's deliberative process preceding adoption and promulgation of agency policy.[15] The Senate Report on the FOIA observed that "it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny." [16]

■ The documents at issue in this case are all in the nature of legal advise to the Secretary of State.[17] In his request appellant specifically directed his inquiry to "legal opinions prepared for the Secretaries of State." [18] There can be no doubt that such legal advice, given in the form of intra–agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale for Exemption 5. That the requested documents contain opinion rather than mere fact is undisputed; appellant does not allege the existence of factual material, not

10. *Schwimmer v. United States*, 232 F.2d 855, 863 (8th Cir.), *cert. denied*, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956).

11. *8 In 1 Pet Prods., Inc. v. Swift & Co.*, 218 F.Supp. 253, 253 (S.D.N.Y.1963).

12. *See Tutson v. Holland*, 50 F.2d 338, 340 (D.C.Cir.), *cert. denied*, 284 U.S. 632, 52 S.Ct. 21, 76 L.Ed. 538 (1931); *Congoleum Indus., Inc. v. GAF Corp.*, 49 F.R.D. 82, 85–86 (E.D.Pa. 1969), *aff'd mem.*, 478 F.2d 1398 (3d Cir.1973); *United States v. United States Mach. Corp.*, 89 F.Supp. 357, 359 (D.Mass.1950).

13. *See Brinton v. United States Dep't of State*, 476 F.Supp. 535, 542–43 (D.D.C.1979).

14. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975).

15. *See Jordan v. United States Dep't of Justice*, 591 F.2d 753, 772–74 (D.C.Cir.1978) (*en banc*); *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 66–70 (D.C.Cir.1974).

16. S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965).

17. *See Brinton v. United States Dep't of State*, 476 F.Supp. 535, 540 (D.D.C.1979).

18. *Id.* at 537 (quoting from appellant's FOIA request letter dated 4 Oct. 1977).

intertwined with opinion and advice, which would be unprotected by Exemption 5.[19]

■ Appellant contests the application of the deliberative process exemption primarily by claiming that the requested documents are "final opinions" of the Department of State. Exemption 5 does not protect final statements of policy or final actions of agencies, which have the force of law or which explain actions the agency has already taken; nor does it protect communications that promulgate or implement an established policy of an agency.[20] The rationale underlying the "final opinion" exception to the deliberative process rule is to prevent agencies from developing a body of "secret law" veiled by the privilege of Exemption 5.[21]

The requested documents in this case, however, bear no indicia of finality. They originated in the Office of the Legal Adviser, who has no authority to make final decisions concerning United States policy in the Middle East. Instead, his role is to give advice to those in the State Department who do make the policy decisions. This flow of advisory material is exactly opposite to the paradigm of "final opinions," which typically flow from a superior with policy-making authority to a subordinate who carries out the policy.[22]

■ Advisory materials of this sort can become final opinions only if the agency expressly adopts or incorporates them as working law.[23] Although appellant alleges that advisory material from some of the requested documents was used extensively in a later State Department memorandum, there is no indication that any material was expressly adopted or incorporated by reference in a final opinion of the Department.[24]

■ At oral argument appellant called attention to the age of these legal opinions—a period of several years—as an indication of their "finality." But the age of the opinion has nothing to do with whether it has been adopted as effective agency working law; the State Department could surely within its discretion retain the opinions of the Legal Adviser for whatever value they may have for an indefinite period of time. As occasions arise, State Department policy-makers and perhaps other Executive officials may decide whether to follow the advice on file in the memoranda. The important criterion is whether those who consult the opinions have discretion to follow the opinions or not, based on their persuasive value rather than their character as working law of the Department. By this criterion the documents clearly qualify for protection under FOIA Exemption 5.

■ We therefore conclude that the district court correctly invoked the deliberate process ground for the application of Exemption 5, and we affirm the grant of summary judgment on that basis rather than on the basis of attorney–client privilege. Our discussion of Exemption 5 illustrates a point earlier observed by this court in the *Mead Data* case, concerning the overlap of the attorney–client privilege ground with the deliberative process ground of Exemption 5.[25] The attorney–client privilege primarily applies to *facts* divulged by client to attorney, but its scope also includes opinions from attorney to client based on those facts. The deliberative process, on the oth-

**19.** *See, e. g., EPA v. Mink,* 410 U.S. 73, 91, 93 S.Ct. 827, 837, 35 L.Ed.2d 119 (1973); *Ryan v. Department of Justice,* 617 F.2d 781, 790 (D.C. Cir.1980).

**20.** *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 153–54, 95 S.Ct. 1504, 1517–18, 44 L.Ed.2d 29 (1975); *Ryan v. Department of Justice,* 617 F.2d 781, 790–91 (D.C.Cir.1980); *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978) (en banc).

**21.** *See Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 867–68 (D.C.Cir.1980).

**22.** *See, e. g., id.* at 868.

**23.** *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 161, 95 S.Ct. 1504, 1521, 44 L.Ed.2d 29 (1975).

**24.** *See Brinton v. United States Dep't of State,* 476 F.Supp. 535, 541 n. 5 (D.D.C.1979).

**25.** *Mead Data Cent., Inc. v. United States Dep't of Air Force,* 566 F.2d at 254 n. 28.

er hand, applies to inter– or intra–agency exchanges of *opinions*, but its scope is broad enough to protect those facts intertwined with the opinions or tending to reveal the deliberative process.[26] In any FOIA case involving advisory memoranda from agency lawyers to agency decision–makers, either or both of these grounds of exemption may apply, depending on the circumstances.

In the case now before us it is clear, based on the record, that the deliberative process ground of Exemption 5 covers the requested documents. Further development of the record might or might not show that the attorney–client privilege applies as well; that step is not now necessary. Because the Department affidavits made a detailed showing of the applicability of the deliberative process ground of Exemption 5, and since there is no contradictory evidence or evidence of Department bad faith, the district court was entirely correct in granting summary judgment without conducting an *in camera* inspection of the documents.[27]

The judgment is therefore

*Affirmed.*

---

**26.** *See, e. g., Ryan v. Department of Justice,* 617 F.2d 781, 790 (D.C.Cir.1980); *Montrose Chem. Corp. v. Train,* 491 F.2d 63, 66–70 (D.C. Cir.1974).

**27.** *See, e. g., Hayden v. NSA,* 608 F.2d 1381, 1384–88 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *Founding Church of Scientology v. NSA,* 610 F.2d 824, 836 (D.C.Cir.1979).