Roy BANKS, Plaintiff,

v.

OFFICE OF THE SENATE SERGEANT–
AT–ARMS and Doorkeeper of the United
States Senate, Defendant.

Civ.A. No. 03–56HHK/JMF.

United States District Court,
District of Columbia.

Feb. 5, 2004.

See, also, 2004 WL 1146140.

William P. Farley, John F. Karl, Jr., McDonald & Karl, Washington, DC, for Plaintiff.

Katherine Anne Goetzl, Ronald I. Tisch, Littler Mendelson, Washington, DC, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

### Introduction

This is a Title VII action against the Office of the Senate Sergeant–at–Arms.

During the course of the deposition of a witness named Alvin Macon, plaintiff's counsel posed four questions to which objection was made. As the matter now stands, defendant's counsel has withdrawn the objection to two of the four questions and the dispute centers on the remaining two questions. This dispute has now generated 78 pages of pleadings or 39 pages per question. That must the break old record. Since there has been so much heat and so little light, I must first elucidate the principles pertaining to the attorney-client and work product privileges when the defendant is a government agency.

### The Attorney–Client Privilege

 The attorney-client privilege in this Circuit shields what the client tells an attorney in confidence for the purpose of securing legal advice or legal services. As I have stated:

I have discussed the attorney-client privilege in several of my previous opinions. The fundamental premise of all of them is that the communication must have been made to "a member of the bar of a court" who "in connection with th[e] communication is acting as a lawyer" and the communication must have been made for the purpose of securing either an opinion on law, legal services, or assistance in some legal proceeding. *In re Sealed Case,* 737 F.2d 94, 98–99 (D.C.Cir.1984). The privilege only applies when the information is the product of an attorney-client relationship and is maintained as confidential between the attorney and client. *Brinton v. Department of State,* 636 F.2d 600, 603 (D.C.Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).

The mere showing that the communication was from the client to the attorney does not suffice. *United States v. Western Electric Co.,* 132 F.R.D. 1, 3 (D.D.C.1990). The standard applied is to determine whether the client reasonably intended the attorney to keep the communication confidential. *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 389 (D.D.C.1978) ("[I]n order for the privilege to apply the client's communications must be made with the intention of confidentiality . . ."); *Overseas Private Investment Corporation v.*

*Mandelbaum,* Civ.A. No. 97–1138, Memorandum Opinion at 6, December 15, 1998, (The privilege insulates from disclosure those communications between a client and his attorney in which the client enjoyed a reasonable belief that what he shared with counsel would remain confidential.).

Thus, the relevant inquiry for the set of documents containing communications from the client to the attorney is whether the communications made by Nextel to its attorneys were for the purposes of seeking legal advice, whether Nextel had a reasonable belief that the communication was confidential, and whether the disclosure of this communication would tend to reveal this confidential information. The attorney-client privilege also protects communications from the attorney to the client but only insofar as the attorney's communication discloses a confidential communication from the client. *Evans v. Atwood,* 177 F.R.D. 1, 3 (D.D.C.1997), (citing *Brinton v. Department of State,* 636 F.2d 600, 603–604 (D.C.Cir.1980)). *United States v. Motorola,* 1999 WL 552553 (D.D.C. May 28, 1999).

 An attorney-client relationship may exist between an institution or organization and its counsel. A corporation may claim an attorney-client privilege for confidential communications made by its employees to corporate counsel in order to permit counsel to render legal services or legal advise to the corporation. There is no doubt that government agencies have the same privilege. *Evans v. Atwood,* 177 F.R.D. 1, 3 (D.D.C.1997), (citing *Tax Analysts v. IRS,* 117 F.3d 607, 617 (D.C.Cir.1997)).

### The Work Product Privilege

Attorneys can also claim, on behalf of their clients, a privilege against disclosure of their work product. That privilege takes two forms.

 Fed.R.Civ.P. 26(b)(4) protects from disclosure a document prepared by a party or her agent, including her attorney, for trial or in anticipation of litigation. While the document may lose a portion of its protection upon a showing of substantial need and the

inability to secure a substantial equivalent, the "mental impressions, conclusions, opinions or legal theories of an attorney ... concerning the litigation" are never to be disclosed. Fed.R.Civ.P. 26(b)(3). Hence, the attorney-client privilege may yield to several exceptions, but the work product privilege is, in this sense, inviolate.

■ The federal courts also protect work product even if it has not been memorialized in a document. Questions of a witness that would disclose counsel's mental impressions, conclusions, opinions or legal theories may be interdicted to protect "intangible work product." *Sadowski v. Gudmundsson*, 206 F.R.D. 25 (D.D.C.2002); *Nesse v. Pittman*, 202 F.R.D. 344 (D.D.C.2001); *Athridge v. Aetna Cas. & Surety Co.*, 184 F.R.D. 200 (D.D.C.1998).

### Application of These Principles

Application of these principles to the deposition of an agency employee,[1] whether a present or former employee, would yield the following results when that employee is deposed in a lawsuit against the agency.

■ First, counsel for the agency may object to a question that would disclose a communication made by the agency employee that was intended by the employee to be confidential and was uttered to permit counsel to render legal advice or legal services to the agency. Note that the privilege pertains only to what the employee told the lawyer; what the lawyer told the employee is not protected unless it necessarily discloses what the employee told the lawyer in confidence.

■ Even if the attorney-client privilege is not available, the question may still be improper if the answer would tend to disclose the lawyer's intangible work product privilege as I have defined it, *i.e.*, it would disclose counsel's mental impressions, conclusions, opinions or legal theories.

■ Applying these principles to the two questions at issue compels the conclusion that Mason's answers would not have breached either privilege. The first question to Macon was:

> When you were given a copy of this notice of deposition were you told why you were given a copy of it?

The answer to this question could not possibly have required Macon to disclose what he told defendant's counsel in confidence since it asked him to indicate what someone else told him. Nor could the answer possibly disclose any mental impressions, opinions, or strategic thinking by defendant's counsel.

The second question posed to Mason was:

> Has anyone ever explained to you if you have a conflict of interest with the Sergeant–at–Arms, who will represent you? And what was the option [you had concerning Ms. Pence's and Ms. Watkins' representation]?

Again, the question could neither have provoked the disclosure of anything Macon told the attorneys in confidence nor disclosed counsels' mental impressions, opinions or strategic thinking.[2]

### Agency Counsel's Representing Agency Employees

■ I have purposefully not discussed the significance of government counsel's representing the witness in this context because I deem it irrelevant. There is only one instance where a government lawyer may truly be said to be representing a government employee in the same sense as the traditional representation of a client by a lawyer. When authorized by the Attorney General, attorneys for the Department of Justice may represent employees of federal agencies within the Executive Branch when plaintiffs sue those employees and predicate their cases upon acts that "reasonably appear to have been performed within the scope of the employee's employment." *28 C.F.R.*

---

1. Note that I draw no distinction between present and former employees in my application of the privileges. My formulation turns on whether the question will disclose a particular kind of information and not on the employment status of the witness who is asked the question.

2. Note that since I have concluded that the two questions did not threaten disclosure of privileged information there is no need to resolve plaintiff's claims that certain exceptions to the attorney-client privilege (tort, refreshing recollection) applied.

*§ 50.15.*[3] The most common example of the exercise of this authority occurs in a so-called "Bivens"[4] action in which a plaintiff claims that a government employee violated her constitutional rights. The Assistant United States Attorney who represents the Park Police officer who is sued for unreasonably searching the plaintiff is an obvious example. Once the Attorney General authorizes the Assistant's representation, there exists the same attorney-client privilege between the Assistant and the Park Police officer that would have existed if the Park Police officer had hired her own counsel. There must, of course, be some connection between the act complained of and the government's business. No one would seriously suggest that the taxpayers should pay for government lawyers to represent a government employee when her spouse sues her for divorce.

On the other hand, when a government employee is served with a *subpoena duces tecum,* that calls for the production of documents that belong to a government agency or body, counsel for the agency may protest there has not been compliance with agency regulations pertaining to such a subpoena[5] or that the documents sought are, according to the agency, privileged from production. In this situation, it is the agency that is the client. The individual served with the subpoena is a nominal or titular party and his representation by agency counsel is normative and not personal. Counsel is appearing for the employee solely to protect the agency's interest in preventing disclosure of the documents and, thereby, fulfilling counsel's obligation to her client, the agency.

On a daily basis, counsel for an agency appear to represent the agency at a deposition taken of a government employee. Like any other lawyer, counsel for the agency must represent the agency's interest by preparing the witness for the deposition and objecting to any question that is improper or seeks disclosure of privileged information. Whether or not agency counsel purports to represent the witness being deposed does not diminish or contract the privileges available to the agency one iota. They remain the same for the simple reason that counsel is representing her client, the agency, and the employee, who is being asked questions about matters that occurred during the course of employment, cannot claim a privilege independent of or greater than the privilege his employer can claim. Hence, counsel for the agency cannot assert any greater privilege than is available to the agency by purporting to represent the employee, as well as the agency, in the litigation.

### Ethical Problems

In the hopes of resolving the ethical problems that arise when the attorneys for the defendant indicate they are also representing the employees of the defendant, I add the following final note. A lawyer may not communicate with a party whom she knows to be represented by an attorney without that attorney's consent. D.C. Rules of Professional Conduct R. 4.2(a). The D.C. Bar Legal Ethics Committee has opined, however, that if the opposing party is a corporation, a lawyer may interview persons employed by that corporation without opposing counsel's consent if those employees do not have the authority to bind the corporation with respect to the pending litigation. D.C. Bar Legal Ethics Comm. No. 129. Most significantly in that opinion, the D.C. Committee cited as authoritative an opinion of the ABA Committee on Ethics and Professional Responsibility that spoke to the precise question presented here: must a lawyer secure the consent of opposing counsel before interviewing persons employed by a government agency? The ABA Committee indicated that the lawyer did not have to seek such consent, stating, in pertinent part, the following:

> Nor should the rule [requiring consent of counsel before opposing counsel interviews her client] extend to government employees who are merely witnesses, or otherwise sources of information, but who have no decisional authority with regard to the

---

3. All references to the United States Code and to the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

4. Named for *Bivens v. Six Unknown Named Agents of the Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

5. *See, e.g.,* 5 C.F.R. § 2411.11; 7 C.F.R. § 1.215.

subject matter of the representation, for such an extension would inhibit the search for truth without protecting any government interest legitimately sought to be protected by the rule.

D.C. Bar Legal Ethics Comm. No. 129 (*quoting ABA Formal Opinion 80*).

 It would then follow that counsel for the plaintiff can interview persons employed by the defendant without opposing counsel's consent. In my view, the indication by defendant's counsel that they represent the employees should not be used as a way to require plaintiff's counsel to seek defendant's counsel's consent before conducting the interview. It must be recalled that, generally speaking, no one owns a witness and each party to a lawsuit has an equal right to interview the witnesses who are not parties. *See, e.g., Flamma v. Atlantic City Fire Dept.*, 118 N.J. 583, 573 A.2d 158, 161 (1990). It, therefore, follows that it is improper in this Circuit for a prosecutor to tell government witnesses not to speak to defense counsel if the prosecutor is not present. *Gregory v. United States*, 369 F.2d 185, 187–188 (D.C.Cir.1966) ("But we know of nothing in the law which gives the prosecutor the right to interfere with the preparation of the defense by effectively denying defense counsel access to the witnesses except in his presence."). While application of that principle to civil matters may or may not be appropriate, the case bespeaks the attitude within the profession that obstructing another party's access to a witness in any kind of case solely for the sake of obstruction is improper. *See Restatement (Third) of the Law Governing Lawyers,* § 116(2) (2000). By the same token, counsel who is interviewing the witness has no right to attempt to have the witness disclose information that interviewing counsel has reason to believe is privileged. *E.g., Valassis v. Samelson,* 143 F.R.D. 118 (E.D.Mich.1992); *In re Domestic Air Transp. Antitrust Litigation,* 141 F.R.D. 556, 561–62 (N.D.Ga.1992); *Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 42 (D.Mass.1987). It would, therefore, follow that counsel for the defendant may not use their representation of the employee and their concomitant "right" to withhold their consent as a means to prevent plaintiff's

counsel from interviewing present or former employees of the defendant. Counsel for the defendant must permit those interviews whether or not they purport to represent the witnesses. On the other hand, plaintiff's counsel may not ask any question that would reasonably threaten the witness's disclosing of any information that is protected by the attorney-client or work product privileges as I have defined them in this opinion.

### Other Problems

The parties have also addressed other problems that have arisen either during the course of or during the planning for the deposition. I will not speak to hypothetical issues but, in the exercise of my obligation to keep a firm hand on the discovery process, I will provide them with guidance so that they cannot argue that they were not aware of my expectations the next time one of them complains. I will first say this. The papers in this case are all too full of the kind of bickering that is costing everyone far too much money. If it does not stop, counsel will be amazed at how much more expensive it will get once I start issuing sanctions. I am denying the motion for sanctions, but a word to the wise is sufficient.

 Second, directing a witness not to answer a question on the grounds of relevance is a clear violation of the Federal Rules of Civil Procedure (F.R.Civ. P. 30(d)(1)) and sanctionable.

Third, the depositions of all remaining witnesses will be conducted in accordance with the principles elucidated in this opinion. Failure to comply with them will result in sanctions.

I specifically note that Mr. Macon's deposition may be taken again and conducted in accordance with these principles.